UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSEPH HARRISON and STEPHEN MAZZA,

                Plaintiffs,

v.

LOCAL ONE, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS OF NEW YORK AND NEW JERSEY, AFL-CIO, *et al.*,

                Defendants.

**MEMORANDUM & ORDER**
24-CV-08619 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiffs Harrison and Mazza sued Local One, International Union of Elevator Constructors of New York and New Jersey, AFL-CIO ("Local One"); Leonard Legotte ("in his individual and official capacity as President-Business Manager of Local One"); and the International Union of Elevator Constructors (the "International"). *See* ECF No. 1. Plaintiffs primarily allege violations of the Labor Management Reporting and Disclosure Act ("LMRDA"), a statute "enacted to encourage democratic self-governance in unions and to curb widespread abuses and corruption among union leadership," *Maddalone v. Loc. 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 183 (2d Cir. 1998), based on Plaintiff Harrison's alleged removal from Local One in June 2024 and related retaliation concerning Plaintiff Mazza, *see* ECF No. 6 ¶¶ 1, 4 (Am. Compl.; "AC").[1] Plaintiffs have moved to amend the AC. For the reasons explained below, their motion is DENIED.

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## **BACKGROUND**

As will become clear shortly, Plaintiffs have injected significant unnecessary urgency into this litigation, which has required, *inter alia*, expedited resolution of this motion to amend. Accordingly, the Court assumes basic familiarity with the factual and procedural background of this case and writes only as necessary to resolve the instant motion.

Plaintiffs initiated this action on December 17, 2024, by filing the initial complaint, which included a request for preliminary injunctive relief but no preliminary injunction ("PI") motion. *See* ECF No. 1 at 17–18. Then, on January 2, 2025, they filed the AC, which contained the same request but also had no PI motion. *See* ECF No. 6 at 18. After that, the first substantive filing took place when the International filed a pre-motion letter in anticipation of a motion to dismiss on January 30, 2025, and Local One and Legotte filed their pre-motion letter on February 4, 2025. *See* ECF Nos. 19, 20. Plaintiffs filed their opposition letter on February 7, 2025, in which they indicated that "Plaintiffs will be filing a [PI motion] in around two weeks (delayed only due to [counsel's] illness)." *See* ECF No. 21 at 1.

The case was reassigned to the undersigned on February 10, 2025, and the Court denied the requests for pre-motion conferences and set a briefing schedule for the motions to dismiss. *See* Feb. 10, 2025, Text Order. On February 28, 2025, Plaintiffs filed an "Order to Show Cause for a Preliminary Injunction," *see* ECF No. 24, which the Court struck on the next day for failure to comply with Local Civil Rule 6.1, *see* Mar. 1, 2025, Text Order. On March 3, 2025, Plaintiffs filed their PI motion, which also contained a request for leave to amend, *see* ECF No. 25. As relevant here, Plaintiffs seek a PI

> [r]estraining and enjoining Defendants . . . a) from continuing to deny membership rights to Plaintiff Harrison, including the right to vote in the next election of Local One, and to run for office; b) from failing to reinstate Plaintiff Mazza to his former Business Agent assignment; c) from engaging in any acts of retaliation against Harrison or Mazza; and . . . from engaging in any acts which restrain and / or chill

2

>Local One members' exercise of the right to speak, run for office, or support candidates in union elections.

*Id.* at 1–2.  The PI motion also sought leave to file a proposed second amended complaint.  *See id.* at 1; ECF No. 25-5 ("Proposed SAC").  Also, as relevant here, on March 4, 2025, Plaintiffs explained that they requested a "tight briefing schedule" for the PI in their notice of motion and requested a hearing on their PI "sometime near" March 25, 2025, because "[t]he election in Local One sees nominations in May and in-person voting in June."  *See* ECF No. 26 at 1.

On the next day, the Court entered the following Order:

>ORDER:  Plaintiffs have filed a motion for a preliminary injunction and a motion for leave to file a second amended complaint.  *See* ECF No. 25.  They have also filed a motion for leave to file excess pages and a motion for a hearing.  *See* ECF No. 26.  The motion to file excess pages is GRANTED.  The request for leave to amend is procedurally defective because it was filed without a pre-motion letter.  *See* Individual Practices §§ IV.A.2, IV.A.2.a.  Nevertheless, because the request for leave to amend is simple, the Court exercises its discretion to excuse compliance with the Rule and directs Defendants to respond to the request for leave to amend on or before March 11, 2025.  Each Defendant group may file a letter in Opposition not to exceed five pages.  Their Opposition(s) shall specifically address the effect of any amendment on the motion for a preliminary injunction.  Relatedly, because the request for leave to amend may render moot any forthcoming motions to dismiss, the Court VACATES the previously ordered briefing schedule for the motions to dismiss and will set a schedule for any forthcoming motions to dismiss after resolution of the motion for leave to amend and motion for a preliminary injunction.  *See* Feb. 10, 2025, Text Order.  With respect to the motion for a preliminary injunction, the Court directs Defendants to file their Opposition(s) on or before March 18, 2025, and Plaintiffs may file a reply, if any, on or before March 25, 2025.  The motion for a hearing is HELD IN ABEYANCE.

*See* Mar. 1, 2025, Text Order.  Local One and Legotte filed their letter in opposition to Plaintiff's motion to amend on March 11, 2025, *see* ECF No. 27, as did the International, *see* ECF No. 28.

## **LEGAL STANDARD**

Under Rule 15, "[a] court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or

undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023).

## DISCUSSION

By waiting to seek leave to amend until they filed their PI motion, Plaintiffs have put this case in an odd procedural posture, requiring quick resolution of the motion to amend in the lead-up to resolution of the PI, which they also demand expedited adjudication of.  Nevertheless, the Court can easily deny their request at this juncture.  Local One and Legotte argue that permitting amendment is futile, prejudicial, and an act of bad faith.  *See* ECF No. 27 at 2–5.  The International similarly asserts futility and prejudice.  *See* ECF No. 28 at 3.  The Court agrees that the amendments are brought in bad faith at this time.[2]

As an initial matter, the Court disagrees with Plaintiffs' characterization that "[t]he amended pleading adds no new facts, adds no new legal theory, and does not prejudice Defendants in any way" and "[t]he amended pleading, other than to correct some grammatical errors, has one major purpose:  to change the request for damages to be only directed to Legotte and not to the unions themselves." ECF No. 25-29 at 30.  If those statements do not actually violate Plaintiffs' counsel's obligations under Rule 11 or his duty of candor to this Court, they certainly come close, as the amendments in the Proposed SAC are not nearly as trivial as he suggests.  First, standing on its own, the claim regarding the scope of the amendments is inaccurate.  The Proposed SAC continues to seek emotional distress damages against all Defendants "jointly and severally."  Proposed SAC at 19.

---

[2] The Court is in no position to adequately assess futility in this posture.  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021).  Obviously, there has been no Rule 12(b)(6) motion in this case, after the resolution of which the Court would normally make a determination regarding the futility of a proposed amendment.  And on these papers, where the Court lacks the benefit of full adversarial presentation on the merits of the claims, it would be premature to try to rule on them.

Second, Plaintiff Harrison tries to "walk back his own characterization" of an incident in April 2023. *See* ECF No. 27 at 5.  The AC alleges that he "became intoxicated during certain social events after the NBTLC [National Building Trades Legislative Conference] meetings.  At one of the events, he made unprofessional comments and gestures toward one woman, causing at least one complaint to be made to [Defendant] Legotte."  AC ¶ 13.  But the Proposed SAC would water down that allegation to read:  "Plaintiff Harrison drank excessively during social events after the NBTLC meetings, and danced one evening in an inappropriate manner with one woman married to the President of another union, while he was intoxicated.  His behavior caused at least one complaint to be made by the President of the union whose wife he had inappropriately danced with."  Proposed SAC ¶ 13.

Third, with respect to the union charges filed against Plaintiff Harrison, the AC reads: "The charges were not filed with Local One, as per Article XVIII Section IV of the IUEC Constitution, which states:  'When charges have been made, the entire matter shall be referred to the Local Executive Board and the Executive Board will try, hear, and determine said charges.' A similar provision exists in the Local One Constitution.  Instead, the charges were filed by Legotte with the International Union."  AC ¶ 23.  It also obliquely alleges that the union charges were untimely because the constitution had a two-week statute of limitations.  *Id.* ¶ 31b.  And Plaintiffs attached to the AC a copy of the International's October 2021 constitution.  *See* ECF No. 6-1.  Now, however, the Proposed SAC seeks to incorporate a version of the Local One constitution from 1972 in support of Plaintiffs' argument, now made explicit, *see* Proposed SAC ¶ 71, that the union charges were filed "months" late, *id.* ¶ 23; ECF No. 25-24.  But Legotte and

5

Local One point to the operative 2023 constitution, which provided for a two-year statute of limitations. *See* ECF No. 27 at 4 (citing ECF No. 27-1 at 18).[3]

Fourth, the Proposed SAC adds a "scheme to suppress dissent" theory of liability under the LMRDA. *Compare* AC ¶ 69, *with* Proposed SAC ¶ 70.

In light of the foregoing changes, Plaintiffs' motion for leave to amend is denied because of their bad faith in this posture.[4] "Although there is scant guidance in this Circuit with respect to what constitutes bad faith for purposes of denying leave to amend, where an amendment is made merely to gain a tactical advantage," amendment may be properly denied. *See Dass v. CUNY*, No. 18-cv-11325, 2024 WL 4986914, at *5 (S.D.N.Y. Dec. 5, 2024). Here, the Proposed SAC is a tactical move from Plaintiffs. First, although delay alone does not constitute bad faith, *see id.*, Plaintiffs' decision to wrap their motion to amend into their PI motion undoubtedly creates a "moving target" for Defendants, *see* ECF No. 28 at 3. In this case, the timing appears to be clearly tactical: Plaintiffs could have sought to make these amendments in the months this case was pending without a PI motion, but they instead waited until they filed a PI motion accompanied by a request for a "tight briefing schedule" (and indeed, initially, without even a motion or memorandum of law at all, *see* Mar. 1, 2025, Text Order). After all, Defendants' opposition to the PI motion is due next week, and they do not even have the certainty of knowing

---

[3] On a Rule 12(b)(6) motion, the Court could consider this version of the Local One constitution because Plaintiffs incorporate it by reference in the Proposed SAC, ¶ 57. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Saba Cap. Master Fund, Ltd. v. BlackRock ESG Cap. Allocation Term Tr.*, No. 24-cv-01701, 2024 WL 3162935, at *10 n.13 (S.D.N.Y. June 25, 2024).

[4] Although Defendants also raise persuasive arguments under the undue prejudice rubric, the relevant test for it is poorly suited to the atypical procedural posture of this case, so the Court proceeds under the bad faith framework. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) ("In deciding whether such prejudice exists, courts evaluate whether the amendment would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.").

what complaint they should be looking at. *See Mount Vernon Pres. Soc'y v. Clements*, 415 F. Supp. 141, 143 (D.N.H. 1976) (where "[p]laintiff's eleventh hour decision to amend its complaint and expand the legal theory on which it was seeking preliminary relief surprised both the court and defense counsel," declining to "consider the amendment as part of plaintiff's claim for preliminary relief"). As such, the Court agrees with the International when it argues that, to the extent this motion fails because of its cramped timing, that is Plaintiffs' own fault. *See* ECF No. 28 at 3.

Second, even if the Proposed SAC would not dramatically reshape the scope of the PI motion, it would minimally create evidentiary confusion for the PI motion with little warning to Defendants. Plaintiff Harrison verified both the AC and the Proposed SAC. *See* AC at 20; Proposed SAC at 20. As such, the AC, in which he painted his own conduct in a less favorable light, could be treated as evidence on a PI motion. *See Gov't Emps. Ins. Co. v. Strut*, No. 24-cv-00554, 2024 WL 4887333, at *3 (W.D.N.Y. Nov. 26, 2024). So, his attempted revision of his sworn statements further undermines Defendants' ability to quickly put together a coherent response to the PI motion.

Finally, the Court cannot look past counsel's misrepresentation of the nature of the amendments, which, notwithstanding Plaintiffs' provision of a redline, underplayed the gravity of the amendments in an attempt to brush aside Rule 15. This point is underlined by their perfunctory motion to amend, in which they just asserted that "[t]here is no reason why the Court should not grant leave to file." ECF No. 25-29 at 30. In the Court's view, their obfuscation is further proof of bad faith.

As a closing note, the Court observes that insofar as this denial largely stems from Plaintiffs' choice to pursue their motion to amend in such a compressed way, the denial is without prejudice to renewal following resolution of the PI motion. At that point, the risk of

7

tactical conduct likely dissipates, as the motion to dismiss schedule has been vacated. *See Mount Vernon*, 415 F. Supp. at 143 (declining to consider late amendments in PI posture but stating that the court would consider the amendments at the merits stage); *see also Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010) (explaining Rule 15's "particular" role in facilitating the Federal Rules' preference for "resolving disputes on their merits").

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend, ECF No. 25, is denied. The parties shall abide by the deadlines in the Court's prior Order.

SO ORDERED.

                                            */s/ Hector Gonzalez*
                                            HECTOR GONZALEZ
                                            United States District Judge

Dated: Brooklyn, New York
       March 13, 2025