UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSEPH HARRISON and STEPHEN MAZZA,

                                    Plaintiffs,

                -against-                                24 CV 8619 (HG)

LOCAL ONE, INTERNATIONAL UNION OF
ELEVATOR CONSTRUCTORS OF NEW YORK AND
NEW JERSEY, AFL-CIO, et al.

                                    Defendants.

<br>

**DEFENDANT LOCAL ONE, INTERNATIONAL UNION OF
ELEVATOR CONSTRUCTORS OF NEW YORK AND NEW JERSEY
AFL-CIO'S AND DEFENDANT LEONARD LEGOTTE'S MEMORANDUM
<u>OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE ACTION</u>**

James Emmet Murphy, Esq.
Maura S. Moosnick, Esq.
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor
New York, NY 10004
(212) 943-9080
jmurphy@vandallp.com
mmoosnick@vandallp.com
*Attorneys for Local One Defendants*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ......................................................................................................... 2

    I.    Procedural History ......................................................................................... 2

    II.   Relevant Allegations ..................................................................................... 3

          a.   Plaintiff Harrison's Expulsion by Defendant IUEC for Drunken and
              Sexual Misconduct ..................................................................... 3

          b.   Breakdown in Relationship Between Plaintiff Mazza and Defendant
              Legotte ......................................................................................... 4

ARGUMENT ............................................................................................................. 5

    I.    Legal Standard .............................................................................................. 5

    II.   Plaintiff Harrison Fails to Allege Unlawful Retaliation under LMRDA Section
          101(a)(2) ..................................................................................................... 6

    III.  Plaintiff Harrison Fails to Allege Unlawful Discipline under LMRDA Section
          609 .............................................................................................................. 9

    IV.  Plaintiff Mazza Fails to Allege That He Engaged in Speech Protected by the
          LMRDA ..................................................................................................... 10

    V.   Plaintiff Mazza Fails to Allege Unlawful Discipline under LMRDA Section 609 ..... 13

    VI.  Plaintiffs Fail to Allege a Scheme to Suppress Dissent in Local One ........................ 15

    VII. Plaintiff Harrison Cannot Establish a Claim for Breach of Contract ...................... 21

    CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

Page

**Federal Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)....................................................................................................... 5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................... 5, 8

*Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,*
493 U.S. 67, 110 S. Ct. 424 (1989)....................................................................... 13, 14

*Commer v. Keller,*
64 F. Supp. 2d 266 (S.D.N.Y. 1999) ................................................................ 10, 12, 18

*Cotter v. Owens,*
753 F.2d 223 (2d Cir. 1985) .................................................................. 6, 10 ,15, 16, 17

*Dilacio v. N.Y.C. Dist. Council of the United Bhd. of Carpenters & Joiners of Am.,*
593 F. Supp. 2d 571 (S.D.N.Y. 2008) .............................................. 7, 8, 15, 16, 18, 20

*Dolan v. Transport Workers Union,*
746 F.2d 733 (11th Cir. 1984) ..................................................................................... 12

*Finnegan v. Leu,*
456 U.S. 431, 102 S. Ct. 1867 (1982)............................................................. 14, 15, 16

*Franza v. Int'l Bhd. of Teamsters, Local 671,*
869 F.2d 41 (2d Cir. 1989) ................................................................... 1, 15, 16, 20

*Fuji Photo Film U.S.A., Inc. v. McNulty,*
669 F. Supp. 2d 405 (S.D.N.Y. 2009) ....................................................................... 23

*Goldstein v. Pataki,*
516 F.3d 50 (2d Cir. 2008) ........................................................................................... 5

*Green v. Brigham,*
2005 U.S. Dist. LEXIS 1521, 2005 WL 280327 (E.D.N.Y. Feb. 3, 2005) ................... 6

*Helmer v. Briody*,
759 F. Supp. 170 (S.D.N.Y. 1991) .............................................................11

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995) ................................................................. 12

*Johnson v. Kay*,
860 F.2d 529 (2d Cir. 1988) ................................................................. 17

*Kelly v. Int'l Union of Operating Eng'rs Local 30*,
2020 U.S. Dist. LEXIS 211764 (E.D.N.Y. Nov. 12, 2020)........................................6, 11

*Leavey v. Int'l Bhd. of Teamsters-Theatrical Teamsters Local Union No. 817*,
2015 U.S. Dist. LEXIS 135509 (S.D.N.Y. Oct. 5, 2015)............................................11

*Maddalone v. Local 17, United Bhd. of Carpenters & Joiners*,
152 F.3d 178 (2d Cir. 1998) ........................................... 6, 13-14, 14, 15, 16, 17

*Marsalisi v. N.Y.C. Dist. Council of Carpenters & Joiners*,
2022 U.S. Dist. LEXIS 73401 (S.D.N.Y. Apr. 21, 2022)............................................ 9

*Matana v. Merkin*,
989 F. Supp. 2d 313 (S.D.N.Y. 2013) ........................................................... 22

*Mayes v. Local 106, Int'l Union of Operating Eng'rs*,
1995 U.S. Dist. LEXIS 1669 (N.D.N.Y. Jan. 20, 1995), aff'd at 1995 U.S. App. LEXIS 39919
(2d Cir. Dec. 27, 1995)...................................................................... 8, 13

*Papasan v. Allain*,
478 U.S. 265, 106 S. Ct. 2932 (1986)........................................................... 5

*Petramale v. Local No. 17 of Laborers Int'l Union of North Am.*,
736 F.2d 13 (2d Cir. 1984) ................................................................... 18

*Phelan v. Local 305 of the United Ass'n of Journeymen*,
973 F.2d 1050 (2d Cir. 1992) ................................................................... 1

*Sampson v. Dist. Council of N.Y.C.*,
2012 U.S. Dist. LEXIS 141822 (S.D.N.Y. Sep. 27, 2012) ...................................... 5, 15

*Swan Media Grp., Inc. v. Staub*,
841 F. Supp. 2d 804 (S.D.N.Y. 2012) ........................................................................ 22

*Ulrich v. Soft Drink, Brewery Workers & Delivery Emples., Indus. Emples., Warehousemen,*
*Helpers & Misc. Workers, Greater N.Y. & Vicinity, Local Union No. 812*,
2019 U.S. Dist. LEXIS 43297 (S.D.N.Y. Mar. 15, 2019)..................................... 11-12

## Statutes and Regulations

### Federal Statutes

Fed. R. Civ. P. 8(a)(2) .............................................................................................. 5

Fed. R. Civ. P. 12(b)(6).......................................................................................... 5, 23

Labor-Management Reporting and Disclosure Act (LMRDA) § 101,
29 U.S.C. § 411 ...................................................................................................... 20

Labor-Management Reporting and Disclosure Act (LMRDA) § 101(a)(2),
29 U.S.C. § 411(a)(2) ............................................... 1, 5, 6, 8, 9, 10, 12, 13, 15, 18, 23

Labor-Management Reporting and Disclosure Act (LMRDA) § 609,
29 U.S.C. § 529..................................................................... 1, 9, 10, 13, 14, 15, 23

### State Statutes

N.Y. Gen. Oblig. Law § 5-701............................................................................ 21, 22

## PRELIMINARY STATEMENT

In their Second Amended Complaint against Local One, International Union of Elevator Constructors of New York and New Jersey, AFL-CIO ("Local One") and Local One's President and Business Manager, Leonard Legotte ("Legotte," together with Local One as the "Local One Defendants"), Plaintiffs Joseph Harrison ("Harrison") and Steven Mazza ("Mazza") allege that the Local One Defendants and the International Union of Elevator Constructors ("IUEC," together with the Local One Defendants as "Defendants") violated Sections 101(a)(2) and 609 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411(a)(2) and 529. Harrison also alleges that Defendant Legotte breached an oral contract.

"The power granted to federal courts to uphold a member's Title I rights has been circumscribed by Congress which, at the same time it created members' rights, reaffirmed the basic tenet that absent an abuse of power that directly infringes a member's rights, unions should be self-governing, free from judicial oversight. As a consequence, the thrust of decisional law is that a direct infringement of membership rights or a real threat to the democratic integrity of the union is required to state a claim cognizable under § 102 of the Act." *Franza v. Int'l Bhd. of Teamsters, Local 671*, 869 F.2d 41, 48 (2d Cir. 1989). "Congress did not intend Title I of the LMRDA to create a panoply of rights to which all persons injured in some way relating to a union may turn when seeking redress." *Phelan v. Local 305 of the United Ass'n of Journeymen*, 973 F.2d 1050, 1055 (2d Cir. 1992).

In the case at hand, Plaintiffs Harrison and Mazza are disgruntled former and current officers of Local One who are attempting to plead claims under the LMRDA to seek Court intervention in Local One and the IUEC's internal affairs to reverse a loss of Union membership (for Harrison) and a perceived loss of professional status (for Mazza). The Plaintiffs' delayed and last-ditch

1

attempt to allege that these losses were unlawful retaliation as part of a scheme to suppress dissent in Local One are unsupported and in some cases belied by their own allegations. The Plaintiffs have failed to allege facts that can sustain their claims against the Defendants, and all claims should be dismissed in their entirety.

## BACKGROUND

### I.    Procedural History

On December 17, 2023, Plaintiffs Harrison and Mazza commenced this action on the basis of, *inter alia*, purported violations of the LMRDA. *See* ECF Doc. No. 1. On January 2, 2025, Plaintiffs filed their First Amended Complaint (ECF Doc. No. 6), which was served on the Local One Defendants on January 13, 2025. *See* ECF Doc. Nos 11-12.  On February 28, 2025, Plaintiffs moved by order to show cause for preliminary injunctive relief and to file a second amended complaint (ECF Doc. No. 24); after that application was denied on procedural grounds (*see* ECF Dkt. Runner dated March 1, 2025), they moved for relief by notice of motion on March 3, 2025. *See* ECF Doc. No. 25.  After the Local One Defendants, as well as parent union IUEC objected to the filing of an amended pleading pending the application on injunctive relief (*see* ECF Doc. Nos. 27, 28), the Court denied the Plaintiffs' request to amend on the basis that the amended pleading at that time was proffered in bad faith. *See* ECF Doc. No 29.  After additional briefing by the parties, the Court denied the Plaintiffs' request for preliminary injunctive relief.  *See* ECF Doc. No. 44.

On April 22, 2025, the parties filed letter briefs regarding the Defendants' request for a stay of discovery (*see* ECF Doc. Nos. 46, 47) and the Plaintiffs renewed their request to file a Second Amended Complaint (*see* ECF Doc. No 48), to which the Defendants subsequently objected in part. *See* ECF Doc. No. 49.  The Court granted a brief stay of discovery pending resolution of the

instant motion to dismiss. *See* ECF Dkt. Runner dated April 23, 2025.  On May 9, 2025, Plaintiffs filed a revised Second Amended Complaint which addressed the Defendants' objections. *See* ECF Doc. Nos. 50, 51 and ECF Dkt. Runners dated May 5 and May 9, 2025.  The Second Amended Complaint is now the operative complaint in this matter (notwithstanding the leave granted to Defendants to rely upon Harrison's prior sworn statements, to which Plaintiffs did not object; *see* ECF Dkt. Runner dated May 5, 2025).  The Local One Defendants move to dismiss the Plaintiffs' First, Second, Sixth, Seventh, and Eighth claims for relief.

## II.     Relevant Allegations

### a.  Plaintiff Harrison's Expulsion by Defendant IUEC for Drunken and Sexual Misconduct

Plaintiff Harrison, a former Vice President and Business Agent and member of Defendant Local One, was expelled from membership following a trial conducted by the Defendant IUEC regarding charges filed by Defendant Legotte that Harrison was "drunk and disorderly, harass[ed], touch[ed], and grop[ed]" the wife of an officer of another union, made "unwelcome sexual comments, act[ed] unprofessional while on business for the union," and engaged in "conduct unbecoming of a Vice President/Business Agent of Local One."  Harrison himself admits that while representing Local One at a building trades union conference in Washington, D.C., he "drank excessively... and danced one evening in an inappropriate manner with a woman married to the President of another union, while he was intoxicated" and "made unprofessional comments and gestures toward one woman, causing at least one complaint to be made to Legotte."  *See* First Amended Complaint, ECF Doc. No. 6 ("FAC") ¶ 13; Second Amended Complaint, ECF Doc. No. 51 ("SAC") ¶ 13.

Notwithstanding this misconduct, Harrison appealed his expulsion in part on the basis of his conclusion that "that the charges were politically motivated."  SAC, ¶ 31(b).  In his appeal, he

alleged that Legotte had previously promised not to bring charges if Harrison resigned from his officer position, alleged that "similarly situated officers were treated far more leniently, and argued that Legotte only moved forward with charges in retaliation for his efforts on behalf of a candidate in the vacancy election for his position, who Legotte was opposed to." *Id*. The relevant facts proffered by Harrison in connection with these contentions are a description of drunken (but not sexually harassing) behavior by another officer who did not face expulsion (*see* SAC, ¶ 15), and the allegation that he gave a campaign speech for Andy Schrettner and "[o]n the day of that speech Harrison received a text message from Legotte demanding a call." *See* SAC, ¶ 20.

### b. Breakdown in Relationship Between Plaintiff Mazza and Defendant Legotte

Plaintiff Mazza, a current Vice President and Business Agent and member of Local One, was geographically reassigned in the Fall of 2023 from East Manhattan and Brooklyn to Staten Island, the Bronx, and Westchester, an area he contended was less prestigious. *See* SAC, ¶¶ 47-48. Around the same time, he was also removed from an appointed trustee position on a Local One benefit fund. *Id*. at ¶ 49. It is undisputed that Legotte, as President and Business Manager of Local One, has the discretionary authority to make operational changes and decisions such as these as he sees fit. *See* SAC, Ex. S, Art. IX Sec. 7 and Art. XI Sec. 2. In support of his claim that these changes were unlawful retaliation, Mazza states that "[n]o explanation was given for either move. It was not coincidental that these moves occurred one week after Schrettner, who Mazza openly supported and campaigned on behalf of, beat Legotte's candidate in the Vice-Presidential election." SAC, ¶ 50.

Mazza also describes several examples of Legotte's displeasure with Mazza's September 2023 investigation of an alleged incident involving an appointed officer, Brian Houser, which culminated in Mazza's demand of Legotte (via a letter on Local One letterhead) that "Brother

4

Houser be removed from his position as Union Organizer and that Brother Houser be prohibited from holding any appointed position in this Union at any future date" without the benefit of a hearing and trial. *See* SAC, ¶¶ 43-45, 54, 57; *id.*, Exs. O and P. Mazza alleges that thereafter, Legotte did not trust him to participate in activities such as collective bargaining negotiations. *See* SAC, ¶ 51. Mazza notably does not contend that Legotte or anyone else at Local One in any way interfered with his rights as a member, his access to the membership, or his ability to speak freely with membership regarding Union matters.

## ARGUMENT

### I.    Legal Standard

The Federal Rules of Civil Procedure require a complaint to "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In assessing a motion to dismiss under Rule 12(b)(6), a court must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Sampson v. Dist. Council of N.Y.C.*, 2012 U.S. Dist. LEXIS 141822, at *7 (S.D.N.Y. Sep. 27, 2012) (citing *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932 (1986)). Plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that offers only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and/or "naked assertion[s]" devoid of "further factual enhancement" is insufficient. *See Twombly,* 550 U.S. 544, 555, 557; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## II.    Plaintiff Harrison Fails to Allege Unlawful Retaliation under LMRDA Section 101(a)(2)

Section 101(a)(2) of the of the LMRDA, 29 U.S.C. § 411(a)(2), preserves the right of a Union member "to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting." Section 101(a)(2) "protects union members from direct interference with union membership rights in retaliation for their expression of opinions concerning union activities." *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners*, 152 F.3d 178, 183 (2d Cir. 1998) (citing *Cotter v. Owens*, 753 F.2d 223, 228 (2d Cir. 1985)). "To successfully state a claim for free-speech retaliation in violation of the LMRDA, a union member plaintiff must allege the following: '(1) [his] conduct constituted free speech under the LMRDA; (2) the speech was the reason the union took action against [him]; and (3) damages." *Kelly v. Int'l Union of Operating Eng'rs Local 30*, 2020 U.S. Dist. LEXIS 211764, at *9 (E.D.N.Y. Nov. 12, 2020) (quoting *Green v. Brigham*, 2005 U.S. Dist. LEXIS 1521, 2005 WL 280327, at *9 (E.D.N.Y. Feb. 3, 2005)) (internal quotations omitted) (alterations in original).

Harrison's claim is that by the "bringing and sustaining of charges against Plaintiff Harrison and bringing about Harrison's loss of membership in the Union because he supported Schrettner's election, Defendants Local One, Legotte, and IUEC have violated Section 101(a)(2) of the LMRDA, 29 U.S.C. Sec. 411(a)(2), in part because they retaliated against Harrison for his support of Schrettner, and in part because Harrison's removal is part of a scheme to suppress dissent in Local One."[1] SAC, ¶ 70. Harrison's "burden as a pleader [is] to allege facts showing that his claim of a dishonorable motive on [Defendants'] part is more plausible than an honorable one."

---

[1] Plaintiffs' "scheme to suppress dissent" theory is addressed separately, *supra*.

6

*Dilacio v. N.Y.C. Dist. Council of the United Bhd. of Carpenters & Joiners of Am.*, 593 F. Supp. 2d 571, 577 (S.D.N.Y. 2008).

Harrison does not dispute the nature of the sexually harassing behavior that underlay the charges against him, and specifically admits that that while representing Local One at a building trades union conference in Washington, D.C., he "drank excessively… and danced one evening in an inappropriate manner with a woman married to the President of another union, while he was intoxicated" and "made unprofessional comments and gestures toward one woman, causing at least one complaint to be made to Legotte." *See* FAC, ¶ 13; SAC, ¶ 13.

The behavior of which Harrison was accused, including the conduct to which he admits, would obviously cause harm to Local One and others. Nonetheless, Harrison avoided acknowledging the gravity of his actions and failed to demonstrate an understanding of his wrongdoing and the harm it caused Local One and others. *See generally* SAC, Ex. T. Legotte's subsequent involvement in bringing the charges is natural, as Harrison admits that complaints were made directly to Legotte regarding the sexual misconduct (*see* FAC, ¶ 13), and it is also "the duty of any member or any officer of this Local who has direct or indirect knowledge of the commission of any of the above punishable offenses by a member, to prefer [sic] charges against such member in writing." *See* SAC, Ex. S, Art. XXIV, Sec. 2.

Harrison effectively asks this Court to credit the argument he made in his internal appeal that alleged that "similarly situated officers were treated far more leniently," and that "Legotte only moved forward with charges in retaliation for his efforts on behalf of a candidate in the vacancy election for his position, who Legotte was opposed to." *See* SAC, ¶ 31(b). Harrison's comparison of his own situation to that of another officer, whom Harrison does not contend also committed

misconduct of a sexual nature (*see* SAC, ¶ 15), only serves to emphasize Harrison's failure to grasp the seriousness of his own actions.

Harrison attempts to establish the requisite "free speech" prong to sustain a claim under Section 101(a)(2) by pointing to a speech he made at an unspecified date and time in favor of Andy Schrettner, a candidate in a Local One election. *See* SAC, ¶ 20. Harrison then tries to draw a causal link by stating that "[o]n the day of that speech Harrison received a text message from Legotte demanding a call" and that a few weeks later, the charges were filed. *See id*. at ¶¶ 20-22. Harrison offers no further allegations which would fill in the numerous speculative and logical jumps that must be made to infer a retaliatory motive in a request for a phone call and the proffering of charges for misconduct which Harrison does not substantially deny.

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Assuming *arguendo* that Harrison's alleged speech in support of Schrettner was protected speech under the LMRDA, there then "must be a direct nexus between the union's action and [his] exercise" of the protected speech. *Mayes v. Local 106, Int'l Union of Operating Eng'rs,* 1995 U.S. Dist. LEXIS 1669, at *74 (N.D.N.Y. Jan. 20, 1995) ((aff'd at 1995 U.S. App. LEXIS 39919, at *9 (2d Cir. Dec. 27, 1995) (*per curiam*, summary order)). Harrison has failed to allege any such nexus. Indeed, he fails to allege any facts which would make his retaliation claim more than purely speculative, or which would suggest that Legotte's having a retaliatory motive to bring the charges is "more plausible" than Legotte taking action to fulfill his obligation to protect Local One from the ramifications of misconduct undertaken by one of its officers. *See Dilacio*, 593 F. Supp. 2d 571, 577. Harrison's contention that the charges were politically motivated is belied by his own admissions of wrongdoing, including that he repeatedly engaged in out of control drinking and that he was at fault for behaving inappropriately at the

conference. *See* FAC, ¶ 13; SAC, ¶ 13; *id.*, Ex. N p. 3. Accordingly, Harrison's claim of unlawful retaliation under Section 101(a)(2) must fail.

### III.    Plaintiff Harrison Fails to Allege Unlawful Discipline under LMRDA Section 609

Section 609 of the LMRDA, 29 U.S.C. § 529, renders it unlawful for a union or its representatives "to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act." "In essence, Section 609 prohibits unions from retaliator[ily] disciplining members for exercising the rights set forth in Section 101." *Marsalisi v. N.Y.C. Dist. Council of Carpenters & Joiners*, 2022 U.S. Dist. LEXIS 73401, at *13 (S.D.N.Y. Apr. 21, 2022)

As an initial matter, the Local One Defendants did not conduct the trial or impose Harrison's punishment; insofar as the Local One Defendants did not themselves engage in a fine, suspension, expulsion, or imposition of other discipline, a charge under Section 609 could not be sustained against them. Even if the Local One Defendants had issued Harrison's discipline, the claim still must fail because Harrison was not expelled for engaging in protected activity under the LMRDA. Harrison's discipline was very clearly imposed because of his drunken and sexually harassing misconduct (*see* SAC, Ex. F and Ex. N), which is not protected activity under the LMRDA. Indeed, Harrison does not deny the accuracy or substance of the Trial Board decision (*see* Ex. F) or the decision regarding his appeal (Ex. N), which detail the basis for the charges, trial, and discipline imposed. For the same reasons that his claim for retaliation under Section 101(a)(2) must fail, so here does Harrison fail to allege facts which bring the possibility of a pretextual or retaliatory motive for the discipline above the level of speculation and into the realm of plausibility. *See also Marsalisi*, 2022 U.S. Dist. LEXIS 73401, at *13 (applying same analysis to claims of

retaliatory formal discipline under Section 101(a)(2) and 609 and noting that where a claim under Section 101(a)(2) fails, so must a parallel claim under Section 609).

### IV. Plaintiff Mazza Fails to Allege That He Engaged in Speech Protected by the LMRDA

Sections 101(a)(2) and 609 both require that a union member have engaged in a right protected by the LMRDA for the alleged discipline or retaliation in connection therewith to be actionable. *See* 29 U.S.C. §§ 411(a)(2), 529; *see also Commer v. Keller*, 64 F. Supp. 2d 266, 272-73 (S.D.N.Y. 1999) ("In asserting that their rights under § 101(a)(2) have been violated, defendants are required to demonstrate that their rights as members have been interfered with as a reprisal for their protected speech in a manner that threatens union democracy."). "[O]nly speech as a member, not as an officer, is protected by § 101(a)(2)." *Commer*, 64 F. Supp. 2d 266, 270. An exception lies only where "an attack on a union officer… was part of a 'scheme to suppress dissent' among union officials and the claimant can show by clear and convincing proof that the attack was part of 'a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out.'" *Id.* (quoting *Cotter v. Owens*, 753 F.2d 223, 229).

Plaintiff Mazza's claims rest upon the proposition that he engaged in a right protected by the LMRDA when "he complained about Defendant Legotte's appointee Houser, and supported Schrettner's election." *See* SAC, ¶¶ 75-76. Specifically, in or around September 2023, Mazza addressed a letter to Legotte in connection with Mazza's investigation of an alleged incident involving appointed Union Organizer Brian Houser, in which Mazza demanded that "Brother Houser be removed from his position as Union Organizer and that Brother Houser be prohibited from holding any appointed position in this Union at any future date" without the benefit of a hearing and trial. *See* SAC, Ex. O. Mazza also alleges that he "openly supported and campaigned

on behalf of" candidate Andy Schrettner,[2] whom Mazza contends was not Legotte's favored candidate. *See* SAC, ¶¶ 46, 50.

Mazza's self-described investigation of Brian Houser and corresponding letter to Legotte on Local One letterhead (*see* SAC, Ex. O) were clearly undertaken in his capacity as an officer, not as a member of Local One. Moreover, Mazza's actions and speech in this regard were directed solely toward Legotte. "Courts in this jurisdiction are clear that free speech within the meaning of the LMDRA is speech made 'in the context of the union democratic process, *i.e.* political speech primarily addressed to other union members, rather than free speech at large.'" *Leavey v. Int'l Bhd. of Teamsters-Theatrical Teamsters Local Union No. 817*, 2015 U.S. Dist. LEXIS 135509, at *21-22 (S.D.N.Y. Oct. 5, 2015) (quoting *Helmer v. Briody*, 759 F. Supp. 170, 176 (S.D.N.Y. 1991)). Mazza "does not allege that he engaged in political speech primarily addressed to other union members," and therefore fails to allege facts demonstrating that his investigation of Houser and letter to Legotte were protected speech. *See Kelly v Int'l. Union of Operating Eng'rs*, 2020 US Dist. LEXIS 211764, at *10. In fact, Mazza does not allege in any way "that his complaints, letters, and grievances, or the substance thereof, were communicated to other union members." *Leavey*, 2015 U.S. Dist. LEXIS 135509, at *22-23 (holding that letters to union leadership "do not qualify as 'free speech' under the LMRDA"). The only facts alleged by Mazza relate to "speech with Board Members, trustees, other elected and appointed officials, and attorneys," and where "the instances of speech here outlined were not 'primarily addressed to other union members,'…. [t]hese instances of speech are thus not protected by the LMRDA." *Ulrich v. Soft Drink, Brewery*

---

[2] In the FAC, Mazza merely alleges that he "openly supported" Andy Schrettner, not that he campaigned on his behalf. *See* FAC, ¶ 42. In the SAC, Mazza now also alleges that he "campaigned on behalf of" Andy Schrettner (*see* SAC, ¶¶ 43, 50) but still fails to put forth any specific facts whatsoever regarding any specific instance of speech or action in which he engaged in to this effect.

*Workers & Delivery Emples., Indus. Emples., Warehousemen, Helpers & Misc. Workers, Greater N.Y. & Vicinity, Local Union No. 812*, 2019 U.S. Dist. LEXIS 43297, at \*80-81 (S.D.N.Y. Mar. 15, 2019).

Lastly, the speech that Mazza attempts to claim was protected was a letter demanding that Legotte take action to discipline Houser without the benefit of a hearing or trial.  *See* SAC, Ex. O. Mazza's demand for reprisal against Houser without due process, written in his official capacity and on Local One letterhead, cannot constitute protected speech under the LMRDA.[3]  *See, e.g., Dolan v. Transport Workers Union*, 746 F.2d 733, 742 (11th Cir. 1984) ("Depending on the content of the speech and the nature of the office, the officer's speech may either advance her duties of office or interfere with these duties. . . . In addition, officers with broad policymaking or policy enforcing powers may be considered to be 'speaking for the union' on most any issue relevant to union policy. If the court determines that an officer could reasonably be perceived as speaking for the union, if her speech affects performance of her specific duties, the protections of [§ 101(a)(2)] for membership speech do not apply.") (alterations in original).  It is unsurprising that Mazza's official demand for Legotte to discipline a member without due process would cause Legotte to question Mazza's competence, and there is no authority suggesting that such a demand constitutes protected speech.

Mazza self-servingly alleges that he "openly supported and campaigned on behalf of" candidate Andy Schrettner, whom Mazza contends was not Defendant Legotte's favored candidate.

---

[3] Insofar as Mazza's own demands of Legotte would obviously violate Houser's rights under the LMRDA, Mazza's vague and conclusory accusations toward Legotte (*see, e.g.,* SAC, ¶ 66) utterly lack credibility.  *See Commer*, 64 F. Supp. 2d 266, 269 ("the Court is not required to uphold the validity of a claim supported only by conclusory allegations: 'conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint.'") (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)).

*See* SAC, ¶ 46, 50.  Despite Mazza's apparent ability to recall and quote conversations at length (*see, e.g.*, SAC, ¶ 45), he alleges zero facts in connection with his campaign activity on behalf of Schrettner.  Even assuming that Mazza did, in fact, engage in campaign activity on Schrettner's behalf, he fails to allege any facts creating a nexus between such protected activity and the personnel changes made by Legotte.  *See Mayes,* 1995 U.S. Dist. LEXIS 1669, at *74 (N.D.N.Y. Jan. 20, 1995) ("there must be a direct nexus between the union's action and the member's exercise of his § 411 rights") (aff'd at 1995 U.S. App. LEXIS 39919, at *9 (2d Cir. Dec. 27, 1995) (*per curiam*, summary order) (finding Plaintiff's "claims to be without merit for substantially the reasons stated by the district court")).  Mazza's conclusory allegation that the changes were "not coincidental" (*see* SAC, ¶ 50) is plainly insufficient to support an actionable connection absent the allegation of specific facts supporting this conclusion.

Mazza fails to allege that he engaged in protected activity or that there was any connection between purported protected activity and actions taken by Legotte, and Mazza's claims under both Sections 101(a)(2) and 609 must therefore fail as a matter of law.  Moreover, as set forth below, even if Mazza did engage in protected activity under the LMRDA, he fails to allege the existence of discipline or a scheme to suppress dissent and his claims must fail on this basis as well.

**V.    Plaintiff Mazza Fails to Allege Unlawful Discipline under LMRDA Section 609**

"By using the phrase 'otherwise discipline,' Congress did not intend to include all acts that deterred the exercise of rights protected under the LMRDA, but rather meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules."  *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 91, 110 S. Ct. 424, 438-39 (1989).  As a matter of law, a claim under Section 609 of the LMRDA cannot be based upon allegations of a "personal campaign to suppress criticism of [one's] leadership" where the purported discipline

13

"was not the result of an established union disciplinary process." *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners*, 152 F.3d 178, 185. Where a complaint alleges "only 'personal vendettas' instead of actions taken by the union as an organizational entity, by a 'tribunal' or as a result of a 'proceeding' convened by the union," it fails to allege discipline within the meaning of Section 609 and should be dismissed. *Maddalone*, 152 F.3d at 185 (quoting *Breininger*, 493 U.S. 67, 93-94); *see also Breininger*, 493 U.S. 67, 94 (Complainant "did not allege acts by the union amounting to 'discipline' within the meaning of the statute. According to his complaint, he was the victim of the personal vendettas of two union officers. The opprobrium of the union as an entity, however, was not visited upon petitioner. He was not punished by any tribunal, nor was he the subject of any proceedings convened by respondent. In sum, petitioner has not alleged a violation of [Section 609], and the Court of Appeals correctly dismissed his claim under the LMRDA.").

Mazza plainly fails to allege that any formal action was taken against him by any of the Defendants, instead pointing to two personnel changes undertaken within Defendant Legotte's discretionary control of Local One's operations. *See* SAC, ¶¶ 47-49, 75; *id*., Ex. S, Art. IX Sec. 7 and Art. XI Sec. 2. Where a Union president possesses the authority to "direct the Union's business agents," the LMRDA is not intended to "alter the traditional pattern which would permit a union president under these circumstances to… carry out his policies." *See Finnegan v. Leu*, 456 U.S. 431, 441-442, 102 S. Ct. 1867 (1982). Mazza accordingly has failed to allege "discipline" within the meaning of Section 609 and this claim must fail as a matter of law. *See Breininger*, 493 U.S. 67, 94.

Moreover, even if the actions against Mazza were the result of formal proceedings of some kind, it is well established that "'discipline,' as used in § 609, refers only to retaliatory actions that affect a union member's rights or status as a member of the union." *Finnegan v. Leu*, 456 U.S. 431,

14

437. "[T]he general rule is that status as a union employee or appointed officer is not a membership right within a union and is not protected by the LMRDA," and therefore a change in such status cannot constitute discipline under Section 609. *See Maddalone*, 152 F.3d at 184 (citing *Finnegan*, 456 U.S. at 438); *see also Cotter v. Owens*, 753 F.2d 223, 226 ("The LMRDA protects union members as members, not in their roles as union officers[.]"). Here, Mazza's appointment as a fund trustee would clearly fall within the "appointed officer" exception established in *Finnegan* and therefore could not sustain a claim under Section 609.

Similarly, Mazza's geographic assignment is not subject to the union election process, and Mazza does not dispute that the right to appoint Business Agents to geographic locations is within Legotte's discretionary authority as President-Business Manager (*see* SAC, Ex. S, Art. IX Sec. 7 and Art. XI Sec. 2), thus bringing Mazza's geographic assignment under the *Finnegan* umbrella. Therefore, because the changes to Mazza's discretionary geographic assignment and appointed trustee position are "not a membership right and not protected by the LMRDA," (*Maddalone*, 152 F.3d at 184), Mazza cannot sustain a cause of action upon them and this claim should be dismissed.

## VI.    Plaintiffs Fail to Allege a Scheme to Suppress Dissent in Local One

"A plaintiff alleging a violation of Section 101(a)(2) must allege sufficient facts to suggest that the defendant's conduct was 'part of a calculated and deliberate scheme to discourage dissent' among union members, rather than 'ad hoc personal retaliation' against the plaintiff." *Maddalone*, 152 F.3d at 185; *accord Sampson v. Dist. Council of N.Y.C.*, 2012 U.S. Dist. LEXIS 141822, at *12; *Dilacio*, 593 F. Supp. 2d 571, 580-81. "Direct interference with Title I rights is required to state a cognizable § 102 claim." *Franza v. Int'l Bhd. of Teamsters, Local 671*, 869 F.2d 41, 47 (2d Cir. 1989). A union's otherwise lawful action "against a single individual is cognizable under the Act only if that individual adequately pleads that he has become 'a symbol for a movement within

the rank and file members,' so that 'discipline of that person could be considered threatening to the exercise of Title I rights by union members generally.'" *Dilacio*, 593 F. Supp. 2d at 583 (quoting *Franza*, 869 F.2d at 45).

Mazza claims mistreatment in the form of his geographic reassignment, which he personally "considered a demotion," and his removal from an appointed position as a trustee on a Local One benefit fund. *See* SAC, ¶¶ 47-49. "[T]he general rule is that status as a union employee or appointed officer is not a membership right within a union and is not protected by the LMRDA." *See Maddalone*, 152 F.3d at 184 (citing *Finnegan* 456 U.S. at 438). Under this "general rule," therefore, the personnel changes described by Mazza are not actionable. An exception will lie only where a plaintiff presents "'clear and convincing proof' that her dismissal was 'part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out.'" *Maddalone* 152 F.3d at 184 (quoting *Cotter*, 753 F.2d at 229).

In *Maddalone,* for example, the Court held that allegations which included reference to specific prior findings regarding identical parties in a Court-governed RICO investigation, as well as allegations that a governing faction "often disrupted meetings and prevented opposition candidates from speaking to suppress criticism of his leadership within the union" and that a Union president issued an order "that every member who had participated in the protest demonstrations should be taken off his job," were sufficient to sustain a claim relying on this exception. *See id*. at 185. In contrast, Mazza merely alleges that his geographic reassignment and removal from an appointed office were "not coincidental" – although, notably, no specific allegations are made as to what the purported harmful effect on Mazza or other members of such "non-coincidental" actions would be – and attempts to bolster this with illustrations of personal animus between himself and Defendant

16

Legotte. *See* SAC ¶¶ 50-52, 54.[4]  Insofar as Mazza's allegations relate solely to himself, they inherently cannot suggest the existence of facts to support "a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out."  *Cf. Maddalone* at 185.

This Circuit has suggested that what appears to be "an isolated act of retaliation for political disloyalty" could potentially be part of a "purposeful and deliberate attempt to suppress dissent within the union" where viewed through the lens of a fifteen-plus year history of infighting among Union factions. *See Cotter*, 753 F.2d at 229-30. A claim under this theory is supported where "a Plaintiff alleges 'more than random acts of individuals directed solely at [the plaintiff]'" and can show "attempts by the defendants to prevent union members sympathetic to [the plaintiff] from expressing their views." *Maddalone*, 152 F.3d at 184 (quoting *Johnson v. Kay*, 860 F.2d 529, 537 (2d Cir. 1988)).  Here, the allegations date back only to 2023[5] and there are no allegations suggesting a broader effort to stifle or suppress speech by a dissident faction or among the union membership.  Rather, Plaintiffs point only to Harrison's expulsion for admitted misconduct, and two personnel changes undertaken in connection with Mazza's position.  The sole additional suggestion that "Legotte utilized the Union's law firm, Virginia & Ambinder, in an effort to keep Harrison from campaigning," (*see* SAC, ¶ 19), still fails to support "a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out," (*Maddalone* at 185), or which would be "threatening to the exercise of Title I rights by union members generally"

---

[4] Mazza also attaches and quotes at length a letter he wrote to Legotte in April 2024 which reiterates his description of instances of interpersonal tension between himself and Legotte, but otherwise consists almost entirely of conclusory statements, recitation of the elements of potential LMRDA claims, and legal analysis.  *See* SAC, ¶ 57; Ex. P.

[5] Reference is made to a 2007 federal trusteeship (*see* SAC, ¶ 11), perhaps in a vague effort to suggest a nefarious history, but no actual allegations are made regarding such a history and no further elaboration or connection to the other allegations in the pleadings is proffered.

(*Dilacio* at 583).  Harrison moreover does not deny what he alleges to be the substance of the letter,[6] and the allegation is at best neutral.

While Mazza points to alleged conversations in which Defendant Legotte expressed displeasure with Mazza and occasionally used strong language to convey such, he does not allege that Legotte "has threatened [him] with physical harm, a legal proceeding, or any loss of membership benefits. The few courts that have permitted a § 101(a)(2) infringement case to proceed based on mere speech [by the alleged oppressor] all involved speech with a direct threat of punishment by the speaker." *Commer*, 64 F. Supp. 2d at 271-72.

The Plaintiffs have also not "pled facts to support a conclusion that an 'established union history or articulated policy' exists which evinces 'a deliberate attempt by union officials to suppress dissent within the union.'" *Commer*, 64 F. Supp. 2d at 272 (quoting *Petramale v. Local No. 17 of Laborers Int'l Union of North Am.*, 736 F.2d 13, 16 (2d Cir. 1984)).  The conversations that Mazza describes occurring between himself and Legotte, or at Local One Executive Board meetings (*see* SAC, ¶¶ 51, 52, 54) are at worst no more than "[c]ritical statements made by the union president" toward or about Mazza, which "hardly amount to a series of oppressive acts by the union leadership." *Commer*, 64 F. Supp. 2d at 272 (further noting that "[t]he cases that do permit claims to go forward based on the silencing of an officer almost uniformly involve the dismissal of that officer from his or her position in the union leadership…. Defendants' allegations do not contain facts sufficient to support the conclusion that plaintiff's verbal and written attack on defendant union officers threatens the ability of other members to speak out.") (internal citations omitted).

---

[6] An actual copy of the letter, the authenticity of which Plaintiffs did not dispute in response to the Local One Defendant's opposition to their motion for injunctive relief, can be found at ECF Doc. No. 35-6.

Mazza's own allegations actually support the proposition that Local One's Executive Board is democratically run. *See*, *e.g.*, SAC, ¶¶ 54, 55, 63 (discussion of votes held by Executive Board relating to meeting minutes). Mazza remains a Business Agent and Vice President,[7] and does not make any allegation that he or anyone else has been impacted in their ability to serve the membership or communicate with the membership. Even the most generous possible reading of the pleadings cannot support a deliberate scheme or series of acts which threaten the ability of members to speak out or engage in political discourse.

Harrison similarly fails to allege facts sufficient to support his claim that his "removal is part of a scheme to suppress dissent in Local One." [8] SAC, ¶ 70. Harrison does not dispute the nature of the behavior that underlay the charges against him, and specifically admits that that while representing Local One at a building trades union conference in Washington, D.C., he "drank excessively… and danced one evening in an inappropriate manner with a woman married to the President of another union, while he was intoxicated" and "made unprofessional comments and gestures toward one woman, causing at least one complaint to be made to Legotte." See FAC ¶ 13; SAC ¶ 13. Harrison's contention that his expulsion was politically motivated is belied by his own admissions of wrongdoing, including his admission that he repeatedly engaged in out of control drinking and that he was at fault for behaving inappropriately at the conference. *See* SAC, Ex. N. p. 3. Moreover, Harrison fails to allege any knowledge of, or involvement in, the September 2023 election or related events on the part of the IUEC, which is the entity that imposed his

---

[7] Nominations were held on May 19, 2025 for elected positions, including President/Business Manager and Vice President/Business Agent positions. Mazza, of his own volition, did not seek nomination for any office, and his term will conclude at the end of June 2025.

[8] Harrison invokes only his expulsion in connection with this theory (as opposed to his invocation of both the "bringing and sustaining of charges" and his expulsion in connection with the unlawful retaliation theory). *See* SAC, ¶ 70.

expulsion.  Under the facts (or lack thereof) pled by Harrison, it is therefore impossible that the expulsion imposed by the IUEC could have been politically motivated or part of a scheme to suppress dissent in Local One.

As set forth above, Legotte's personnel changes in relation to Mazza and the IUEC's expulsion of Harrison for misconduct are, on their face, a lawful exercise of authority by the respective parties as to Mazza and Harrison individually.  Claims based on these otherwise lawful actions are "cognizable under the Act only if that individual adequately pleads that he has become 'a symbol for a movement within the rank and file members,' so that 'discipline of that person could be considered threatening to the exercise of Title I rights by union members generally.'" *Dilacio*, 593 F. Supp. 2d 571, 583 (citing *Franza*, 869 F.2d at 45).  Both Harrison and Mazza patently fail to allege that either of them are the "symbol of a movement," and as stated above, none of the actions Mazza complains of constitute "discipline" under the meaning of Title I.  And here, as in *Dilacio*, Plaintiffs' "allegations are conclusory in their characterizations of the states of mind of [Defendants], and devoid of any specific facts, historical or articulated, demonstrating a union plan to suppress dissent among union members or otherwise directly infringe all members' rights under the Act. The well-pleaded facts in these allegations -- and they are difficult to discern -- do no more than reveal [Plaintiffs'] belief that [Defendant] treated him unfairly." 593 F. Supp. 2d at 585. Harrison's claims of "unfair[ness]" and Mazza's "allegations of personal conflict fail to state a viable claim under section 101 that the freedom of all union members had been impacted." *See id*.

The allegations in this case fall considerably short of the allegations of mass discipline, threats of physical violence, disruption of membership meetings, and similar facts that could sustain a "scheme" theory under Section 101.  *See Dilacio* at 581-583 (collecting and discussing cases).

The singular conclusory and speculative allegation that "it is likely that Legotte will engage in additional threats and take retaliatory actions, that he and his appointed officers, like Houser, will engage in efforts to undermine the election,[9] and intimidate members so as to restrict their right (and Mazza's right) of free speech" (*see* SAC, ¶ 66) is no more than a poorly-disguised recitation of the elements of a claim under the LMRDA and, without more, cannot sustain Plaintiffs' case.

## VII.    Plaintiff Harrison Cannot Establish a Claim for Breach of Contract

For the reasons set forth above, the Court should dismiss the first and second causes of action pled by Plaintiff Harrison. Once dismissed, there will be no basis for the Court to exercise supplemental jurisdiction over Harrison's purported claim for breach of contract. Even on its own, however, Harrison fails to plead a viable claim for breach of contract, and the claim should be dismissed irrespective of the outcome of the Court's decision regarding the Plaintiffs' other claims.

As an initial matter, Harrison's claim is barred by New York's Statute of Frauds, General Obligations Law § 5-701. Under Article XXIV, Section 3, Paragraph 3 of the Local One Constitution and By-Laws (*see* SAC, Ex. S), charges presented by one Union Member against another shall be rejected by the Executive Board when "based upon alleged misconduct which occurred more than two (2) years prior to the filing of the charges." As the conduct upon which Harrisson was charged and found guilty occurred during the North American Building Trades Unions Legislative Conference from April 23, 2023 to April 25, 2023, charges could have been timely laid against Harrison at any date through, at the earliest, April 23, 2025, more than one year after the alleged oral contract was entered into between Harrison and Legotte on April 28, 2023. As such, the alleged oral contract under which Legotte "agreed not to present disciplinary charges

---

[9] Since nominations on May 19, 2025, campaigning has been actively underway for Local One's June 2025 elections. This speculative allegation has not been borne out.

against him" was an alleged agreement to forego conduct for more than one year. Under New York General Obligations Law § 5-701, "Every agreement… is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith… if such agreement… by its terms is not to be performed within one year from the making thereof." Since the alleged agreement not to present charges against Harrison constituted an alleged obligation undertaken by Legotte which would not be completed within the term of one year, and as Harrison has neither presented nor even alleged the existence of a written agreement subscribed to by Legotte reflecting such an obligation, the alleged oral agreement is void as a matter of law.

In any event, under New York law, the elements of a breach of contract claim are: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages. *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012). Harrison pleads the existence of an oral contract between himself and Legotte as follows: "On April 28, 2023, Legotte summoned Harrison to discuss the complaint he had received from the President of the Laborer's Union. Legotte recounted the events referenced above, noted other incidents, and told Harrison that he was an embarrassment to the Union. Legotte gave Harrison two choices: resign from his position as Vice President and Business Agent, or face disciplinary charges. Legotte expressly stated that if Harrison resigned, he would not pursue disciplinary charges. Harrison agreed to resign, with a six-week payout." SAC ¶ 16. Harrison's relevant claim for relief then simply states that "[b]y acting as aforedescribed [sic], Legotte breached an oral contract with Harrison." *See* SAC, ¶ 73.

While Harrison alleges the existence of a promise by Legotte upon which he relied, he omits any facts relating to the essential contractual element of consideration. *See, e.g., Matana v. Merkin*, 989 F. Supp. 2d 313, 319 (S.D.N.Y. 2013) (dismissing claim for breach of oral contract where

Plaintiff alleges an "oral promise upon which [they] relied, but the Amended Complaint does not anywhere allege an exchange of promises or other consideration").  Harrison pleads facts sufficient to establish that he accepted a buyout but does not fill in any of "the major terms of the contract." *See Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009).  For a claim for breach to survive, "the claimant must allege the specific provisions of the contract upon which the breach of contract claim is based.  A claim for breach of contract cannot be sustained by a conclusory statement that the accused breached a contract."  *Id*. at 412-13.  Harrison's claim for relief contains solely the conclusory allegation that "Legotte breached an oral contract with Harrison."  *See* SAC, ¶ 74.  Without more, Harrison has not adequately pled this cause of action.

Lastly, it is evident from the pleadings that there is no set of facts under which Harrison can establish the element of damages.  This is because Legotte did not conduct Harrison's trial or impose his expulsion; any damages resulting from Legotte's having filed charges against Harrison are therefore too attenuated to have resulted from the purported breach.  For Harrison to claim otherwise, or to suggest that his expulsion was a certain outcome to the filing of the charges, would be for Harrison to admit that he engaged in expulsion-worthy misconduct.  Indeed, the only damages that Harrison can point to are the natural consequences of his own actions and cannot be tied to the breach.  Absent any ascertainable damages, Harrison's claim is purely academic and should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiffs have failed to state a claim against the Local One Defendants for violations of LMRDA Sections 101(a)(2) and 609.  Plaintiff Harrison has also failed to state a viable claim for breach of an oral contract.  Pursuant to Fed. R. Civ. P. 12(b)(6), this action should be dismissed as to the Local One Defendants in its entirety.

23

Dated: June 2, 2025                          Respectfully submitted,

      New York, NY                          **VIRGINIA & AMBINDER LLP**

    */s/ James Emmet Murphy*
James Emmet Murphy, Esq.
Maura S. Moosnick, Esq.
40 Broad Street, 7th Floor
New York, NY 10004
(212) 943-9080
jmurphy@vandallp.com
mmoosnick@vandallp.com
*Attorneys for Local One and Legotte*

## **WORD COUNT CERTIFICATION**

I, James Emmet Murphy, Esq., an attorney admitted to practice in the court of the State of New York, affirm the following to be true under penalties of perjury:

1. I am counsel of record for Defendants Local One, International Union of Elevator Constructors of New York and New Jersey, AFL-CIO ("Local One") and Leonard Legotte ("Legotte," together with Local One as the "Local One Defendants").

2. The Memorandum of Law in Support of Local One Defendants' Motion to Dismiss the Action contains 7,788 words exclusive of the caption and signature block, and thus does not exceed the word count limit of 8,750 as set forth in E.D.N.Y. Local Civil Rule 7.1(c). *See* E.D.N.Y. Local Civil Rule 7.1(c).


Dated: New York, New York  
      June 2, 2025

**VIRGINIA & AMBINDER, LLP**

*/s/ James Emmet Murphy*  
James Emmet Murphy, Esq.  
40 Broad Street, 7th Floor  
New York, New York 10004  
(212) 943-9080  
jmurphy@vandallp.com  
*Attorneys for Local One Defendants*