UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSEPH HARRISON and STEPHEN
MAZZA,

               Plaintiffs,

        v.

LOCAL ONE, INTERNATIONAL UNION
OF ELEVATOR CONSTRUCTORS OF
NEW YORK AND NEW JERSEY, AFL-
CIO, LEONARD LEGOTTE, *in his
individual and official capacity as President-
Business Manager of Local One,
International Union of Elevator Constructors
of New York and New Jersey, AFL-CIO*, and
INTERNATIONAL UNION OF
ELEVATOR CONSTRUCTORS,

               Defendants.

**<u>MEMORANDUM & ORDER</u>**
24-CV-08619 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      This case arises from an intra-union dispute.  Plaintiffs Joseph Harrison and Stephen

Mazza sued the International Union of Elevator Constructors ("IUEC"), a national labor

organization; Local One, a local labor organization within the IUEC; and Leonard Legotte, Local

One's President-Business Manager (together with Local One, the "Local One Defendants").

ECF No. 51 ¶¶ 6–8 (Second Am. Compl.; "SAC").  Harrison is a former Local One Vice

President and Business Agent who was allegedly "stripped of his membership" in Local One in

May 2024, and Mazza is an elected Vice President and Business Agent for Local One.  *Id.* ¶¶ 4–

5.  Plaintiffs primarily allege violations of the Labor Management Reporting and Disclosure Act

("LMRDA"), a statute "enacted to encourage democratic self-governance in unions and to curb

widespread abuses and corruption among union leadership."  *Maddalone v. Loc. 17, United Bhd.*

*of Carpenters & Joiners of Am.*, 152 F.3d 178, 183 (2d Cir. 1998).[1]  Defendants move to dismiss

the SAC.  *See* ECF No. 52 (Local One's Mot. to Dismiss), ECF No. 54 (IUEC's Mot. to

Dismiss).  For the reasons that follow, the Court GRANTS Defendants' motions and

DISMISSES Plaintiffs' SAC in its entirety.

## BACKGROUND[2]

### A.  Harrison, the April 2023 Conference, and its Aftermath

Harrison has been a member of Local One since 1998.  ECF No. 51 ¶ 9.  In 2022, he was

elected as a Local One Vice President, and in that capacity served as a Business Agent

representing employees on Long Island and Staten Island.  *Id.*  For three days in late April 2023,

he attended the National Building Trades Legislative Conference in Washington, D.C.  *Id.* ¶ 12.

While there, he says he "drank excessively during social events" following the conference

meetings, and at one point, he danced "in an inappropriate manner with a woman who was

married to the President of another union."  *Id.* ¶ 13.  His behavior caused at least one person to

make a complaint to Legotte, the President of Local One since 2007.  *Id.* ¶ 11.

Harrison states that on April 28, 2023, Legotte told him to resign from his position or

face disciplinary charges.  *Id.* ¶ 16.  He chose to resign.  *Id.*  At a June 2023 Local One meeting,

Harrison apologized to union members and "admitted to making 'bad choices.'"  *Id.* ¶ 17.

Legotte then appointed Richard Loeb to Harrison's vacated position.  *Id.* ¶ 19.  In September

---

[1]      Unless otherwise indicated, when quoting cases and the parties' papers, all internal
quotation marks, alteration marks, emphases, footnotes, and citations are omitted.  The Court
refers to the pages assigned by the Electronic Case Files system ("ECF").

[2]      The Court "recite[s] the substance of the allegations as if they represented true facts, with
the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this
stage what are the true facts."  *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d
Cir. 2021).

2023, Local One held elections for the Vice President position.  *Id.* ¶ 18.  Legotte supported

Loeb, while Harrison supported and campaigned for Andy Schrettner, a Local One field

employee, who ultimately won the election.  *Id.* ¶¶ 19–21.

### B.  Union Charges Against Harrison and Trial

On October 4, 2023, Legotte filed union charges against Harrison, accusing him of

violating Section 1, Subsections (2), (8), (12), and (15) of Article XVIII of the IUEC

Constitution and By-Laws.[3]  *Id.* ¶ 22; *see also* ECF No. 51-2 (Written Charges).  The charges

related to his conduct at the conference, including "[d]runk and disorderly [conduct], harassing,

touching, and groping the wife of the [Laborers' International Union of North America

("LINUA")] Safety Director[,] [u]nwelcome sexual comments, acting unprofessionally while on

business for the union[,] and [c]onduct unbecoming of Vice President / Business Agent of Local

One."  ECF No. 51-2.  On October 31, 2023, the IUEC's President, Frank Christensen, appointed

a trial board consisting of two union regional directors.  *Id.* ¶¶ 24–25; *see also* ECF No. 51-3.[4]

On that date, the IUEC emailed the charges to Harrison.  *Id.* ¶ 25; *see also* ECF No. 51-4.

Harrison alleges that the IUEC mailed him a notice of the trial date, but it was not by registered

mail, and that he did not receive the email notice of the trial date.  ECF No. 51 ¶ 26.

The hearing was held on December 12, 2023, with Legotte and Christensen providing

testimony.  *Id.* ¶ 27.  Harrison did not appear.  *See* ECF No. 51-6 at 2 (Trial Board Decision).

---

[3]    Article XVIII Section 1 provides that, after charges and trial, the IUEC may fine, suspend, or expel a member for, among other things, disobeying officers' orders, conduct unbecoming a member, conduct that brings the union into disrepute or into conflict with the law, or conduct that unduly impedes union officers' work.  *See* ECF No. 51-1 at 28–29.

[4]    For the purposes of the instant motions, in addition to the allegations of the SAC, the Court considers the exhibits Plaintiffs attached to the SAC because it may consider the allegations within "any written instrument attached to [a complaint] as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner,* 282 F.3d 147, 152 (2d Cir. 2002).

On January 9, 2024, the trial board issued its decision. ECF No. 51 ¶ 28. The panel found that Harrison's behavior during the conference was "unprofessional and improper and caused a great deal of embarrassment to the [IUEC]. As a result, Local [One] and the IUEC . . . had to do damage control with another Union due to these appalling actions." *Id.* at 3. The trial board issued several sanctions against Harrison for his conduct, including expulsion from the IUEC, and ineligibility to run for, or from being appointed to, a local office or an IUEC office for five years. *See id.*

### C. Harrison's Appeal

In February 2024, Harrison appealed to the General Executive Board ("GEB"), claiming that (1) the notice of the trial was deficient because it was sent by certified mail, not registered mail; and (2) the charges against him were politically motivated and that Legotte filed them because of Harrison's support for Schrettner. *See* ECF No. 51-9 at 1–2. The IUEC accepted the appeal and Harrison appeared in person at the GEB meeting on April 25, 2024. ECF No. 51 ¶ 35.

On May 20, 2024, the General Secretary-Treasurer sent a letter to Legotte, copying Harrison, rejecting each of his claims on appeal. *See* ECF No. 51-14. Relevant here, the letter states that at the GEB appeal, Harrison "admitted that the certified letter notifying him of the trial was correctly addressed to his home," but that "he didn't receive it because he 'wasn't looking for it' and because his kids might have misplaced the mail." *Id.* at 3. Further, the GEB concluded that, even if Harrison did not receive the trial notice, he was not denied due process because the charging party proved its case and Harrison admitted on appeal that he engaged in improper conduct at the conference. *See id.* at 4. It also found "no evidence that the charges were politically motivated," concluded that Harrison had "engaged in serious misconduct in front

4

of many witnesses during one of the biggest union trades events of the year," and required

Christensen to call the LIUNA Safety Director to apologize. *Id.* The GEB added that it was "left

with the definite and firm impression that . . . Harrison has not taken responsibility for his

actions" and "was and continues to be a liability to the [IUEC]." *Id.* at 5.

### D.   Mazza and the Election for Harrison's Position

Mazza has been a Local One member since 1998 and was elected as a Vice President in

2010. *Id.* ¶ 42. In that role, he worked as a Business Agent representing Local One members.

*Id.* In early September 2023, he "was contacted by a number of Local One members about an

incident involving Appointed Organizer Brian Houser." *Id.* ¶ 43. That led him to "discover[]"

that Houser "had threatened and attempted to intimidate" Schrettner, who, as discussed above,

was running to fill the position vacated by Harrison. *Id.* Like Harrison, Mazza supported

Schrettner in that race. *Id.*

On September 11, 2023, Mazza sent a letter to Legotte, describing the incident, urging

the removal of Houser from his position, and demanding that he "be prohibited from holding any

appointed position in th[e] Union at any future date." *See* ECF No. 51-15 at 1–3. After sending

that letter, Legotte called Mazza and ordered him to end his investigation into Houser, allegedly

stating that "Andy [Schrettner] better watch the [ ] out," that Mazza would be "opening a can of

worms" by pursuing the issue, and that he would "go [ ] nuclear" on Mazza if Mazza probed

Legotte or Loeb, the candidate opposing Schrettner. ECF No. 51 ¶ 45.

One week after Schrettner won the election, on September 28, 2023, Mazza says Legotte

moved him from his territory in Brooklyn and East Manhattan to Staten Island, the Bronx, and

Westchester, a territory he claims is generally covered by a new Business Agent and which he

and other members viewed as a "demotion." *Id.* ¶¶ 46–48.  Mazza was also removed from the 401(k) and Annuity Plan Board, a position he had held for 13 years.  *Id.* ¶ 49.

### E.  Procedural History

Plaintiffs filed this action on December 17, 2024, and amended their complaint on January 2, 2025.  *See* ECF Nos. 1, 6.  On March 3, 2025, Plaintiffs moved for a preliminary injunction and sought leave to file a proposed second amended complaint.  *See* ECF Nos. 25, 25-5.  The Court denied Plaintiffs' motion to amend on March 13, 2025, finding that the proposed amendments were brought in bad faith, and denied the motion for a preliminary injunction on April 5, 2025.  *See Harrison v. Loc. One, Int'l Union of Elevator Constructors of N.Y. & N.J.*, No. 24-cv-08619, 2025 WL 813609, at *2 (E.D.N.Y. Mar. 13, 2025); *Harrison v. Loc. One, Int'l Union of Elevator Constructors of N.Y. & N.J, AFL-CIO*, No. 24-cv-08619, 2025 WL 1013391, at *1 (E.D.N.Y. Apr. 5, 2025).

On April 22, 2025, Plaintiffs renewed their motion to amend the First Amended Complaint, ECF No. 48, which the Court granted on May 5, 2025, *see* May 5, 2025, Text Order. Four days later, Plaintiffs filed the SAC, *see* ECF No. 51, and on June 2, 2025, Defendants filed their motions to dismiss.  *See* ECF Nos. 52, 54.

## LEGAL STANDARDS

### I.  Federal Rule of Civil Procedure Rule 12(b)(6)

When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See*, *e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  "To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Johnson v. Mount Sinai Hosp. Grp.*, No. 23-466, 2024 WL 3289475, at *1 (2d Cir. July 3, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A

claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In addition to requiring sufficient factual matter to state a plausible claim for relief, Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to provide a short, plain statement of the claim against the defendant so that the defendant has adequate notice of the claims being asserted. *See id.* at 677–78 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678. To satisfy this standard, the complaint must, at a minimum, "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000). "Plaintiff must allege sufficient facts to state a plausible claim against each defendant named in his amended complaint." *Mitchell v. Macy's Inc.*, No. 17-cv-1845, 2017 WL 11453552, at *4 (S.D.N.Y. May 3, 2017).

## II.    Labor Management Reporting and Disclosure Act

The LMRDA was "enacted to encourage democratic self-governance in unions and to curb widespread abuses and corruption among union leadership." *Maddalone*, 152 F.3d at 183. Section 101(a)(2) of Title I of the LMRDA, the "Bill of Rights of Members of Labor Organizations," guarantees union members "the right to meet and assemble freely . . . and to express any views, arguments, or opinions" concerning candidates and union policies. 29 U.S.C. § 411(a)(2). Section 609 protects a member from being fined, suspended, expelled or "otherwise

disciplined" for exercising any right guaranteed by Title I, and Section 101(a)(5) provides that a member may not be disciplined without notice or a hearing. 29 U.S.C. §§ 529, 411(a)(5). Section 102 of the Act provides that "[a]ny person whose rights secured [by Title I] have been infringed . . . may bring a civil action in a [federal] district court . . . for such relief . . . as may be appropriate." 29 U.S.C. § 412.

### A.    Protected Speech Under Section 101(a)(2)

Section 101(a)(2) provides that:

> Every *member* of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings. Provided, [t]hat nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2) (emphasis added). "To successfully state a claim for retaliation in violation of the LMRDA, a plaintiff must establish the following:  (1) his conduct constituted free speech under the LMRDA; (2) that the speech was a cause for the Union taking action against him; and (3) damages." *Ulrich v. Soft Drink, Brewery Workers & Delivery Emps., Indus. Emps., Warehousemen, Helpers & Miscellaneous Workers, Greater N.Y. & Vicinity, Loc. Union No. 812*, No. 17-cv-4730, 2019 WL 1228056, at *24 (S.D.N.Y. Mar. 15, 2019).

### B.    Full and Fair Hearing Under Section 101(a)(5)

Section 101(a)(5) provides that,

> No *member* of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5) (emphasis added).  Thus, "[t]he LMRDA entitles [a union member] to due notice of the charges against him, the production of some evidence at the hearing to support the charges, that the charges be supported by some evidence, an opportunity to confront and rebut the evidence, and an unbiased tribunal." *Chevalier v. Civil Serv. Emps. Ass'n, Inc.*, No. 10-cv-0446, 2011 WL 1298739, at *8 (N.D.N.Y. Mar. 31, 2011) (citing *Vars v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers*, 320 F.2d 576, 578 (2d Cir. 1963)); *see also Bernstein v. Nolan*, No. 90-cv-3213, 1990 WL 91728, at *12 (S.D.N.Y. June 28, 1990) ("The elements of . . . a fair hearing . . . generally encompass full notice and a reasonable opportunity to be heard–including the right to present evidence and the right to confront and cross-examine witnesses.").

"The 'full and fair hearing' requirement of the LMRDA incorporates the 'traditional concepts of due process.'" *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 385 (2d Cir. 2001) ("*Int'l Bhd. of Teamsters*") (quoting *Kuebler v. Cleveland Lithographers & Photoengravers Union Local 24-P*, 473 F.2d 359, 363–64 (6th Cir. 1973)).  However, "[n]ot all of the due process protections available in the federal courts apply to union disciplinary proceedings." *Id.*  "Such proceedings need only adhere to the 'basic principles of due process.'" *Id.* (quoting *Mayle v. Laborer's Int'l Union of N. Am. Local 1015,* 866 F.2d 144, 146 (6th Cir.1988); *cf. Wildberger v. American Fed'n of Gov't Employees AFL-CIO*, 86 F.3d 1188, 1193 (D.C. Cir. 1996) (the LMRDA protects only against a "breach of fundamental fairness")).

## **DISCUSSION**

Plaintiffs assert eight claims.  In Claims One and Two, Harrison alleges that Defendants violated his free-speech rights under LMRDA Section 609 and Section 101(a)(2) because they retaliated against him for supporting Schrettner's election.  ECF No. 51 ¶¶ 69, 70.  In Claim

Three, Harrison alleges that the IUEC denied him due process by violating the IUEC

Constitution.  *Id.* ¶ 71.  Mazza, in Claim Four, alleges that the IUEC deprived him of an

impartial process for bringing charges under the IUEC Constitution.[5]  *Id.* ¶ 72.  Next, in Claim

Five, Harrison alleges that the IUEC denied him a fair trial guaranteed by LMRDA Section

101(a)(5).  *Id.* ¶ 73.  Harrison further alleges in Claim Six a state-law breach of contract claim

against Legotte.  *Id.* ¶ 74.  Finally, in Claims Seven and Eight, Mazza alleges that the Local One

Defendants retaliated against him for investigating Houser's alleged assault on Schrettner and for

supporting Schrettner in the election, thereby violating his free-speech rights under LMRDA

Section 609 and Section 101(a)(2).  *Id.* ¶¶ 74, 75.

I.  **Plaintiffs' Free Speech and Retaliation Claims**

In order to reconcile the competing interests of fostering union democracy and preserving

union independence, to state a claim under Section 101(a)(2), a union member must demonstrate

"a direct infringement of membership rights or a real threat to the democratic integrity of the

union."  *Depperman v. Loc. 1199 Union*, No. 91-cv-6696, 1994 WL 225434 at *5 (S.D.N.Y.

May 25, 1994) (citing *Franza v. Int'l Bhd. of Teamsters, Local 671*, 869 F.2d 41, 48 (2d Cir.

1989)).  And, although an action pursuant to Section 609 will require a showing that the union

member has been "unlawfully disciplined," even in the absence of such discipline, a member

may seek redress under Section 102 for an "infringement" of LMRDA rights.  *Finnegan v. Leu,*

456 U.S. 431, 439 (1982).  Additionally, although Section 101(a)(2) only protects speech of a

member, not that of an officer, action against a union officer may be held to violate members'

rights if the action was part of a "scheme to suppress dissent" among union officials and the

plaintiff can show by clear and convincing evidence that the action was part of "a series of

---

[5]    The Court does not need to address Claim Four because Mazza withdrew this claim in the
Opposition.  *See* ECF No. 57 at 21.

oppressive acts by the union leadership that directly threaten the freedom of members to speak out." *Cotter v. Owens,* 753 F.2d 223, 229 (2d Cir. 1985).

A.    *Mazza's Claims*

Mazza alleges that the Local One Defendants violated his rights under LMRDA Section 101(a)(2) and Section 609 by reassigning him geographically and removing him from the trustee position in retaliation for his investigation of Houser and his support for Schrettner in the election.  ECF No. 51 ¶¶ 75–76.

The Local One Defendants respond that the personnel actions Mazza complains about do not constitute unlawful discipline under Section 609.  *See* ECF No. 53 at 18–20.  They further argue that Mazza is not protected by Section 101(a)(2) because:  (1) his alleged protected speech, his letter to Legotte about the investigation, is not protected speech under the LMRDA; (2) the SAC alleges no facts establishing a nexus between his alleged protected speech and the personnel actions; and (3) the personnel actions were not "part of a series of oppressive acts by the union leadership."  *See id.* at 15–18, 20–24.

i.    Mazza's Section 609 Claim

Mazza is unable to maintain a claim under Section 609.[6]  The Supreme Court has held that the term "discipline" as used in Section 609 "refers only to retaliatory actions that affect a union member's rights or status *as a member* of the union."  *Finnegan*, 456 U.S. at 437 (emphasis in original).  In other words, Section 609 encompasses only "punitive actions taken against union members as members."  *Id.* at 437–38.  "[S]tatus as a union employee or appointed

---

[6]    Section 609 makes it "unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its *members* for exercising any right to which he is entitled under the provisions of this chapter."  29 U.S.C. § 529 (emphasis added).

officer is not protected by the LMRDA." *Maddalone*, 152 F.3d at 184.  Because Mazza's geographic reassignment as a Business Agent and his removal from the fund trustee position affected only his union employment, not his membership status, these actions do not constitute "discipline" under Section 609.  Accordingly, because Mazza has failed to state a claim under Section 609 of the LMRDA, Claim Seven of the SAC must be dismissed.

ii.    Mazza's Section 101(a)(2) Claim

Turning next to Mazza's claim under Section 102, the Court concludes that he has failed to adequately allege that his rights under Title I of the LMRDA have been "infringed."[7]  *See Finnegan,* 456 U.S. at 439.

First, Mazza fails to allege that his speech is protected by the LMRDA.  It is well established that for speech to be protected under the LMRDA, it must be made "in the context of the union democratic process, *i.e.* political speech primarily addressed to other union members, rather than free speech at large." *Leavey v. Int'l Bhd. of Teamsters-Theatrical Teamsters Loc. Union No. 817*, No. 13-cv-0705, 2015 WL 5802901, at *9 (S.D.N.Y. Oct. 5, 2015).  Here, Mazza alleges only that he sent a letter to Legotte on September 11, 2023, in connection with his investigation of an incident involving Houser, and he does not allege that the letter was ever presented to other union members.  *See* ECF No. 51-15.  And, while he also alleges that he "openly supported and campaigned on behalf of" candidate Schrettner, he alleges no facts, other than the conclusory assertion of "campaign[ing]," describing any campaign activity on

---

[7]    The primary difference between Section 609 and Section 102 is that Section 609 protects against retaliation for the exercise of any right secured under the LMRDA, whereas Section 102 only protects rights secured under Title I.  *See Finnegan,* 456 U.S. at 439 n.10.  In *Finnegan*, the Supreme Court noted the possibility that "a litigant may maintain an action under Section 102— to redress an 'infringement' of 'rights secured' under Title I—without necessarily stating a violation of Section 609." *Id.* at 439.

Schrettner's behalf.  *See* ECF No. 51 ¶¶ 46, 50.  As such, Mazza's alleged instances of speech are not protected under the LMRDA.  *See Grant v. Commc'ns Workers of Am., Loc. 1101*, No. 16-cv-9553, 2017 WL 6000605, at *5–6 (S.D.N.Y. Dec. 1, 2017) (dismissing Section 101(a)(2) claim where plaintiff failed to allege sufficient facts that his complaints to union officers were ever communicated to the union membership); *see also Monaco v. Smith*, No. 00-cv-5845, 2004 WL 203009, at *10 (S.D.N.Y. Feb. 2, 2004) (speech directed by plaintiff, a union officer, solely to his supervisor and the union's president was not protected).

Second, Mazza's free-speech retaliation claim fails for the independent reason that it is based on actions taken against him as a union employee, not as a member.  Generally, "a union's discipline of an individual union employee does not give rise to a claim under Title I of the LMRDA."  *Dilacio v. New York City Dist. Council of the United Bhd. of Carpenters & Joiners of Am.*, 593 F. Supp. 2d 571, 583 (S.D.N.Y. 2008) (citing *Finnegan*, 456 U.S. at 431).  An exception exists where the union employee "adequately plead[s] that his termination was part of the union's deliberate attempt to suppress dissent within the union."  *Id.*  While such a claim is usually "pleaded by allegations of a series or pattern of acts by the union which impact the rights of a number of dissident members or groups," a union's action against a single individual can be cognizable if that individual adequately pleads that he has become "a symbol for a movement within the rank and file members," so that "discipline of that person could be considered threatening to the exercise of Title I rights by union members generally."  *Id.* (quoting *Franza*, 869 F.2d at 45).

Mazza's allegations here come nowhere close to meeting this standard.  His retaliation allegations begin with his September 2023 letter to Legotte.  ECF No. 51 ¶ 44.  The alleged retaliatory acts pled by Mazza are his geographical reassignment as a business agent, his removal

from an appointed position as a trustee on a benefit fund, and Legotte's use of "strong language." ECF No. 53 at 23. This limited back-and-forth with union leadership is neither longstanding nor well-documented. *Cf. Cotter*, 753 F.2d at 229–30 (finding that 15-year history of litigation between a dissident group and the leadership of union local presented a genuine issue as to the motive underlying the removal of a union committee member). Further, because Legotte did not threaten Mazza with "physical harm, a legal proceeding, or any loss of membership benefits," the "strong language" he allegedly used does not amount to a deliberate attempt to suppress dissent within the union. *See Commer v. Keller*, 64 F. Supp. 2d 266, 271–72 (S.D.N.Y. 1999). Mazza has therefore failed to plead sufficient facts showing that any action regarding his interaction with Legotte is part of "a series or pattern of" union acts to suppress dissent.

In sum, Mazza fails to allege sufficient facts to show the existence of protected speech or to show a series of union acts designed to suppress dissent. He therefore fails to state a cognizable claim under Section 101(a)(2) of the LMRDA. Accordingly, Claim Eight of the SAC is dismissed.

B.     *Harrison's Claims*

Harrison claims that Defendants violated his rights under LMRDA Section 609 and Section 101(a)(2) by bringing charges against him and expelling him from union membership in retaliation for his support of Schrettner and as part of a scheme to suppress dissent within Local One. ECF No. 51 ¶ 70.

The Local One Defendants respond that Harrison cannot state a claim under Section 609 against them because they neither conducted his trial nor imposed his punishment, and because he was expelled for misconduct involving sexual harassment rather than for any protected activity under the LMRDA. *See* ECF No. 53 at 14. They further argue that Harrison is not

protected by Section 101(a)(2) because: (1) he was removed for misconduct that "cause[d] harm to Local One," and (2) he fails to plead adequate facts showing that his support of Schrettner constitutes protected speech under the LMRDA, or that there is a direct nexus between his alleged protected speech and the union's actions. *See id.* at 13–14. The IUEC similarly responds that Harrison is not protected by LMRDA Section 101(a)(2) because: (1) he alleges no facts establishing a direct nexus between his support of Schrettner and the IUEC's charges against him; and (2) his discipline stemmed from his misconduct involving sexual harassment. *See* ECF No. 55 at 12–16.

      i.    <u>Harrison's Section 609 Claim</u>

The Court agrees with Defendants that Harrison cannot maintain a claim under Section 609 because nothing in the SAC supports an inference that he was disciplined for engaging in protected activity. Section 609 prohibits unions from disciplining members in retaliation for exercising rights protected by Section 101. *See Corrigan v. New York City Dist. Council of Carpenters & Joiners of Am.*, No. 20-cv-1336, 2022 WL 1185656, at *6 (S.D.N.Y. Apr. 21, 2022), *aff'd*, 2023 WL 176719 (2d Cir. Jan. 13, 2023). Here, Harrison concedes in the SAC that he "drank excessively" and danced "in an inappropriate manner with a woman" while representing Local One at the conference in Washington, D.C., which caused harm to Local One and the IUEC, and required Defendants to "do damage control with another Union." ECF No. 51 ¶ 13; ECF No. 51-6 at 3. Additionally, as the IUEC argues, that the facts in the SAC and its attached exhibits demonstrate that the IUEC imposed discipline based on Harrison's independent violations of the IUEC Constitution, which were wholly unrelated to any protected speech. *See* ECF No. 51-6. In fact, the trial board and GEB considered a host of evidence of Harrison's inappropriate conduct while representing Defendants at the conference. *See id.* The

conduct Harrison concedes he engaged in at the conference is not protected under the LMRDA. Therefore, because "a plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits," *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 461 (S.D.N.Y. 2017), Harrison's claim under Section 609 fails and the Court dismisses Claim One against all Defendants.

  ii. <u>Harrison's Section 101(a)(2) Claim</u>

  To sustain a claim under Section 101(a)(2), Harrison must allege sufficient facts demonstrating a "direct nexus between the union's action and the member's exercise of his [LMRDA Section 101] rights." *Mayes v. Loc. 106, Int'l Union of Operating Engineers*, No. 86-cv-41, 1995 WL 30576, at *21 (N.D.N.Y. Jan. 20, 1995), *aff'd sub nom. Mayes v. Jones*, 99 F.3d 402 (2d Cir. 1995). For example, the Supreme Court has held that an LMRDA Section 101(a)(2) retaliation claim is properly alleged where the union told the plaintiff that "he was being removed 'indefinitely' from his position as business representative specifically because of his outspoken opposition to [a] dues increase." *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 350 (1989).

  By contrast, Harrison fails to state a claim under Section 101(a)(2) because he alleges no direct nexus between any protected activities and his removal from the IUEC. *See Mayes*, 1995 WL 30576, at *21. Defendants contend that Harrison's support of Schrettner played no role in the removal decision, and that his removal was based solely on his misconduct while representing the IUEC and Local One at the conference. ECF No. 53 at 13; ECF No. 55 at 12–16. Harrison also concedes in the SAC that he engaged in inappropriate conduct during the conference. ECF No. 51 ¶¶ 13, 16. For the purpose of determining whether there is a direct nexus between Harrison's support of Schrettner and his removal, the Court does not need to

assess the factual merits of Defendants' contention regarding Harrison's misconduct because Harrison concedes that such misconduct occurred. *See King v. City of New York*, No. 22-231, 2023 WL 2398679, at *2 (2d Cir. Mar. 8, 2023) (finding plaintiff's concession that he engaged in workplace misconduct occurred was an "obvious alternative explanation" for his expulsion from City Counsel).

With respect to the Local One Defendants, Harrison attempts to establish causation by alleging that "[o]n the day of [his speech to support Schrettner in front of a group of 80 members], Harrison received a text message from Legotte demanding a call," and that the charges were filed a few weeks later. *See* ECF No. 51 at 20–22.  However, he alleges no specific dates and no other details about his speech in support of Schrettner's election, and temporal proximity alone is insufficient to suggest that his speech caused his removal. *See Grant*, 2017 WL 6000605, at *5 (finding that temporal proximity alone was insufficient to show protected speech was the reason for suspension).

With respect to the IUEC, Harrison does not allege that the IUEC was aware of his speech in support of Schrettner, Legotte's preference for another candidate, or any other facts concerning the Local One election when the IUEC trial board issued its decision.  Harrison, therefore, cannot plausibly allege that the IUEC retaliated against him for speech that it did not know about. *See Ulrich*, 2019 WL 1228056, at *25; *Leavey*, 2015 WL 5802901, at *8 ("To successfully state a claim for retaliation in violation of the LMRDA, a plaintiff must establish . . . that the speech was a cause for the Union taking action against him.").

In sum, Claim Two of the SAC is dismissed because there is no direct nexus between Harrison's alleged protected activities and his removal from the IUEC, as required under Section 101(a)(2).[8]

## II.    Harrison's Claim Under LMRDA Section 101(a)(5)

Harrison alleges that the charges against him violated his due process rights under Section 101(a)(5) because:  (1) he was not given proper notice of the disciplinary charges, which prevented him from presenting a defense at the hearing on those charges; and (2) the trial board was biased.  ECF No. 57 at 31–32.

The IUEC responds that Harrison was afforded due process because:  (1) the IUEC served him "with notice of written, specific charges" that gave him "sufficient time to prepare a defense" as required by Section 101(a)(5); and (2) Harrison alleges no facts about bias in the appointment of the trial board.  *See* ECF No. 55 at 20–25.

### A.    *Proper Notice*

The Court concludes that the IUEC provided Harrison with proper notice of the disciplinary charges for the following reasons.

First, to meet the specificity requirement under Section 101(a)(5)(A), the written charge "must be 'specific enough to inform the accused member of the offense that he has allegedly committed,'" must be supported by the presentation of a factual basis (*i.e.*, the facts underlying the specific incident giving rise to the charged violation) rather than a mere citation to the union constitution, and must "provide the accused with 'the information needed to conduct a

---

[8]    Since Harrison had resigned from his position as Vice President and Business Agent of Local One, he was no longer a union employee when the IUEC trial board issued its decision against him.  The Court thus does not need to address the issue of whether union actions against Harrison were "part of the union's deliberate attempt to suppress dissent."  *Dilacio*, 593 F. Supp. 2d at 583.

meaningful investigation and prepare a defense.'" *Kuehne v. Loc. No. 1, United Ass'n of Journeymen and Apprentices of the Plumbing and Pipe Fitting Indus.*, No. 09-cv-1974, 2012 WL 13102327, at *4–5 (E.D.N.Y. Feb. 15, 2012) (quoting *Int'l Bhd. of Boilermakers, Iron Shipbuilders, Forgers, and Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 245 (1971); *Gleason v. Chain Service Restaurant*, 422 F.2d 342, 343 (2d Cir. 1970)).  In other words, a notice which provides (1) the nature of the charges and (2) a statement of the factual basis underlying the charges is sufficient to meet the requirement of Section 101(a)(5).  *Kent v. New York State Pub. Emps. Fed'n, AFL-CIO*, 612 F. Supp. 3d 50, 67 (N.D.N.Y. 2020).

Here, the IUEC served Harrison with written notice of the specific charges by certified mail and email on October 31, 2023.  ECF No. 51 ¶ 25.  In the charges, Legotte alleges:  (1) that Harrison violated Article XVIII, Section 1, Subsections (2), (8), (12), and (15) of the IUEC Constitution for his misconduct during the conference in Washington, D.C., in April 2023; (2) his misconduct included "harassing, touching, and groping wife of LIUNA Safety Director," and "unwelcome sexual comments" while representing Local One during the conference; and (3) provides the names of the three witnesses to be presented at the trial.  ECF No. 51-2.  An accompanying letter from the IUEC explains that Christensen appointed two regional directors to conduct the trial and serve as hearing officers.  ECF No. 51-3.  Taken together, these documents, which are attached to the SAC, set out the nature of the charges and the factual basis underlying them, and therefore satisfy the specificity requirement of Section 101(a)(5)(A).  *See Piacente v. Int'l Union of Bricklayers & Allied Craftworkers*, No. 11-cv-1458, 2015 WL 5730095, at *13 (S.D.N.Y. Sept. 30, 2015) (finding charges were "specific enough" under the LMRDA when they stated the time and place of the alleged offense, described its nature, and identified witnesses); *see also Hardeman,* 401 U.S. at 245 ("Section 101(a)(5) requires no more" than "a

detailed statement of the facts relating to the [incident] that formed the basis for the disciplinary action.").

Harrison further argues that he was not afforded a full and fair hearing because the IUEC served him by certified mail rather than by personal, registered service. ECF No. 57 at 31–32. In court proceedings, proper service of process is notification "by means which are reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action." *Mullane v. Central Hanover Bank,* 339 U.S. 306, 314 (1950). Since the purpose of the LMRDA's notice requirement is to facilitate the preparation of a defense, "basic fairness" and common sense dictate that the union be held to the same standard of notice. *Reilly v. Sheet Metal Workers' Int'l Ass'n, AFL-CIO*, 488 F. Supp. 1121, 1126 (S.D.N.Y. 1980). Therefore, certified mail is an acceptable method as long as it is the best means available to ensure actual notice. *Id.* (service of charges by certified mail would have been acceptable except that the union used incorrect address).

The IUEC attempted to serve Harrison by certified mail, and Harrison does not dispute that the notice was correctly addressed. ECF No. 51-14 at 3. He instead alleges that he did not receive it because he "wasn't looking for it" and his children may have misplaced the mail. *Id.* Harrison's allegations do not undermine the adequacy of the notice. Moreover, in addition to the certified mail, the IUEC also emailed him the notice of the charges. *See* ECF No. 51-4. Taking the properly addressed certified mail and email together, the Court finds that the IUEC made reasonable and proper efforts to notify Harrison of the charges. Accordingly, his notice-based claims fail.

B.    *Unbiased Trial Board*

"A union member subject to internal disciplinary proceedings is entitled to an impartial trial body which arrives at its decision on the basis of evidence that the accused has an opportunity to rebut." *Piacente*, 2015 WL 5730095, at *10.  To allege bias of a trial body under the LMRDA, a plaintiff "must make specific factual allegations of bias that show that the panelists were incapable of hearing [his] case impartially." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, No. 88-cv-4486, 2007 WL 2319129, at *4 (S.D.N.Y. Aug. 9, 2007).  A court may find a union hearing officer is biased "only upon a demonstration that [the hearing officer] has been substantially actuated by improper motives." *Id.*

Here, Harrison alleges that the two-person trial board was biased because President Christensen, who appointed the two hearing officers, also testified as a witness against him.  ECF No. 57 at 32.  Harrison's position is unpersuasive.  He alleges no facts suggesting that Christensen bore him any animus, and even if he had, "courts have been reluctant to rule that personal bias or political enmity alone renders a hearing unfair." *Rowan v. Laborers Int'l Union of N. America*, No. 10-cv-3855, 2012 WL 3203046, at *15 (E.D.N.Y. Aug. 3, 2012) (quoting *Perry v. Int'l Longshoremen's Ass'n, AFL-CIO*, 638 F. Supp. 1441 (S.D.N.Y. 1986)).  Absent allegation of actual bias, the mere fact that President Christensen is senior to members of the trial board does not, by itself, indicate bias.

For these reasons, Harrison's claim under Section 101(a)(5) of the LMRDA fails and Claim Five is accordingly dismissed.

## III.    Harrison's Claim Under the Union Constitution

Individual union members may bring suit for violations of a union constitution. *Wooddell v. International Bhd. of Elec. Workers,* 502 U.S. 93, 101 (1991).  However, "[a]

21

violation of a procedural provision of a union's constitution is actionable only if the violation deprived the party of a full and fair hearing." *Int'l Bhd. of Teamsters*, 247 F.3d at 387; *see also Green v. Brigham*, No. 03-cv-5190, 2005 WL 280327, at *8 (E.D.N.Y. Feb. 3, 2005) (finding "[t]echnical violations of a union's constitution, including those concerning trial procedures, do not necessarily amount to a due process violation").  When confronted with claims that a union violated its constitution, courts "must conduct a two-step inquiry:  (1) the court must find that the hearing violated the constitution; and (2) it must find that the violation deprived plaintiffs of a fair trial within the meaning of the [statute]." *Grant v. Commc'ns Workers of Am., Loc. 1101*, No. 16-cv-9553, 2018 WL 1626167, at *4 (S.D.N.Y. Mar. 29, 2018) (quoting *Int'l Bhd. of Teamsters*, 247 F.3d at 387).

Harrison alleges that the IUEC violated its Constitution by filing charges against him at the IUEC rather than with Local One.  *See* ECF No. 57 at 31.  He relies on Article XVIII, Section 4 of the IUEC Constitution, which directs that such charges "shall be referred to the Local Executive Board" for hearing and determination.  ECF No. 51-1 at 29.  The IUEC responds that Harrison ignores Article XVIII, Section 8, which expressly authorizes the General President to appoint hearing officers from the membership of the IUEC to act in place of the Local Executive Board when a majority of the Local board is "disqualified for any reason".[9]  *See* ECF No. 51-1 at 30–31.

For the purposes of evaluating this claim, the Court assumes without deciding that Defendants violated the IUEC Constitution by filing the charges with the IUEC rather than with

---

[9]    Article XVIII, Section 8 states that "[w]henever a majority of the members of the Executive Board of a local union are disqualified for any reason from acting on charges preferred against a member or charges against an officer for removal, then upon notice or application, the General President may appoint a hearing officer or officers from the membership of [the IUEC] to act in the place and stead of the Local Executive Board."  ECF No. 51-1 at 30–31.

Local One and proceeds directly to the second step of the inquiry.  Still, Harrison's claim fails because he was not deprived of a full and fair hearing.  As previously explained in Part II, *supra*, Harrison received proper notice of the hearing, the trial board was unbiased, and the IUEC accepted his appeal and allowed him to appear in person at the GEB meeting.  *See* ECF No. 51-11 at 1.  Thus, even if the Court assumes Harrison satisfies the first part of the two-step inquiry, he does not satisfy the second part of the test.  Accordingly, he fails to bring a plausible claim under the IUEC Constitution.  *See Gillen v. Int'l Bhd. of Teamsters*, 341 F. App'x 728, 730 (2d Cir. 2009) (holding that plaintiff who received notice of his hearing was not deprived of a full and fair hearing, and therefore could not maintain his union-constitution claim).  The Court accordingly dismisses Claim Three.

### IV.    Harrison's Breach of Contract Claim

Harrison argues that Legotte breached an oral contract by filing charges against him. ECF No. 51 ¶ 74.  Although district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), such jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 173 (1997).  And, a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

Here, because all the federal claims have been dismissed, the ordinary case "point[s] toward declining jurisdiction over the remaining state-law claims."  *In re Merrill Lynch Ltd. P'ships Litig.,* 154 F.3d 56, 61 (2d Cir. 1998).  The Court finds no reason to alter course for this

case.  Accordingly, it declines to exercise supplemental jurisdiction over Harrison's state-law breach of contract claim.  Claim Six is therefore dismissed without prejudice.[10]

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motions, ECF Nos. 52, 54, and DISMISSES Plaintiffs' SAC in its entirety pursuant to Rule 12(b)(6).  The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.


SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
December 18, 2025

---

[10]    Because Plaintiffs do not seek leave to amend, the Court declines to grant it.  *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [to amend] that was not made.").  Moreover, Plaintiffs "ha[ve] had multiple opportunities to allege sufficient specific facts to render [their] claims plausible," including in their original complaint, the First Amended Complaint, and the SAC.  *Williams v. Calderoni*, No. 11-cv-3020, 2012 WL 691832, at *8 (S.D.N.Y. 2012).  Therefore, "leave to amend would be futile because [P]laintiffs ha[ve] already had two bites at the apple and they have proven fruitless."  *Harris v. Westchester Cty. Med. Ctr.*, No. 08-cv-1128, 2011 WL 2637429, at *4 (S.D.N.Y. July 6, 2011).